HALL *v.* ALFORD.

1. NAVIGABLE WATERS—WHAT CONSTITUTE—MARSH LANDS.
   Marsh lands adjacent to an island in a navigable stream, which are dry at certain seasons of the year and at other seasons are covered by water to a depth of 10 or 12 inches, do not lie in "navigable waters."

2. SAME—RIPARIAN RIGHTS—TRESPASS BY SPORTSMEN.
   One who anchors his boat in waters outside of the navigable portion of a stream, and throws out decoys and engages in duck hunting from such boat, is a trespasser with respect to the riparian owner.

| 114 | 165 |
| 117 | 462 |
| 114 | 165 |
| 127 | 662 |

Error to Wayne; Hosmer, J. Submitted April 15, 1897. Decided September 14, 1897.

Trespass *quare clausum fregit* by Edmund Hall against Charles Alford and another. From a judgment for defendants on verdict directed by the court, plaintiff. brings error. Reversed.

*Oscar M. Springer* (*H. H. Hatch*, of counsel), for appellant.

*Ari E. Woodruff* and *George W. Coomer* (*W. F. Atkinson*, of counsel), for appellees.

Long, C. J. This action was in trespass, commenced in justice's court, where judgment was given for defendants. On the trial in the circuit the court directed the verdict in favor of the defendants.

The declaration was in writing, and substantially avers that—

"The defendants, on the 15th day of April, 1895, with force and arms, the close of said plaintiff, situate in the township of Brownstown, said county, and known and described as being 'Horse Island,' being situate directly east of sections 1 and 12 in township 5 south, of range 10 east, with the adjacent shore, broke and entered, and with their feet in walking, shooting at game on said plaintiff's land, and, within a short distance of the same, a marsh flowed by water, yet adjacent to the main shore, of which his said lands above described are a part, and while in the act of so shooting game aforesaid, trod down with their feet in so walking and hunting game, and with their boats and decoys crowded onto the grounds, anchored, trod down, trampled upon, and destroyed the grass of said plaintiff there growing, and other injuries to him then and there did," etc.

The plea was the general issue, with notice that no trespass was committed.

The plaintiff gave evidence tending to show that he was the owner in fee of the island. There was offered and received in evidence a patent from the United States to Benjamin Hall, Jr., the land being described therein as "Horse Island, being situate directly east of sections 1 and 12 in township 5 south, of range 10 east, as per official plat approved April 2, 1885." Also a deed from Benjamin Hall, Jr., and wife to plaintiff, describing the same premises. Plaintiff further showed that he was in possession of the property at the time of the trespass complained of, and that he and his grantor had been in possession for many years. This island is situate in the Detroit river, the center of the river being east of the island and the main shore west of it. On April 15, 1895, the defendants came in a boat to a place near the north end of the island and about 60 feet from it, and

about 216 feet from the channel bank, threw out their decoys, and commenced shooting ducks. They were warned off by plaintiff's agent, but refused to go. At the place where the boat was anchored, the water was about 10 or 12 inches deep on that day. It was shown that at some times in the season this place was not covered with water at all, but that at the time in question the water from the upland of the island to that point was from 6 to 12 inches deep, growing gradually deeper as the channel bank was approached. This land between the island and the channel bank is a shallow flat, and during some seasons of the year is covered with weeds, rushes, and grass as high as a man's head. This marsh extends all around the island, though there is a slight current passing through it. Plaintiff on the trial asked for nominal damages, which request was refused.

It is well settled in this State that the fee to the land under the waters of the rivers, as far as the middle thread, is in the riparian owners. In *City of Grand Rapids* v. *Powers*, 89 Mich. 94 (28 Am. St. Rep. 276), the cases upon the subject are collected and the question discussed at such length that it is needless to cite or discuss them here. Among other things, it was there said:

"Under the settled law of this State, the defendant is the owner, by virtue of his riparian rights, of the soil of the river bed to the middle of the stream."

In that case Mr. Justice MORSE quoted with approval from the case of *City of Janesville* v. *Carpenter*, 77 Wis. 288 (20 Am. St. Rep. 123), as follows:

"That the owner in fee of this ground has the right to use and enjoy it to the center of the river in any manner not injurious to others, and subject to the public right of navigation, has been too often decided by this court and other courts to be questioned. As a riparian owner of the land adjacent to the water, he owns the bed of the river *usque ad filum aquæ*, subject to the public easement if it be navigable in fact, and with due regard to the rights of other riparian proprietors. He may construct docks, landing places, piers, and wharves out to navigable waters

if the river is navigable in fact, and, if it is not so navigable, he may construct anything he pleases to the thread of the stream, unless it injures some other riparian proprietor, or those having the superior right to use the waters for hydraulic purposes.  *  *  *  Subject to these restrictions, he has the right to use his land under water the same as above water.  It is his private property, under the protection of the constitution, and it cannot be taken, or its value lessened or impaired, even for public use, 'without compensation,' or 'without due process of law;' and it cannot be taken at all for any one's private use."

Judge MORSE added:

"The law of this State is in complete accord and harmony with that of our sister State of Wisconsin in respect to riparian rights."      .

In *Webber* v. *Boom Co.*, 62 Mich. 636, it was said: "It is the settled rule in this State that the title of the riparian owner extends to the middle line of the lake or stream of the inland waters" (citing many cases).  And again:   "This has become a rule of property in this State, and the Supreme Court [of the United States] recognizes the right of each State to determine the doctrine for itself."  *Barney* v. *City of Keokuk*, 94 U. S. 324.

It is not claimed in the present case that the public can be hindered or in any manner interrupted in its use of the Detroit river for the purpose of navigation; but it is contended that the defendants were not using the river for any such purpose, and that the place where the boat was anchored was not susceptible of any such use or purpose.  Under the rule laid down in *City of Grand Rapids* v. *Powers*, *supra*, the plaintiff here would have the undoubted right to construct wharves or piers out over this low land to deep water.  It is contended, however, by counsel for defendants, that in its then condition the defendants had the right to pass over it in their boat, and for so doing they cannot be counted as trespassers; that, it being covered by the waters of the Detroit river, the public has the right of navigation, and any member of the public may go and come freely, either for business or

pleasure, anywhere within the navigable waters; and that this place was within the navigable waters. On the other hand, it is contended by counsel for plaintiff that those waters, at the point where the boat of defendants was anchored, are not navigable, within the meaning of the term "navigable waters," as the courts now construe that term; and that, even if they could be construed as such waters, the defendants were not using them for that purpose. It is not contended that the defendants injured the grass growing there, but that the trespass consisted in anchoring the boat, and shooting the ducks while so anchored.

Can these waters be considered as navigable? In *City of Grand Rapids* v. *Powers, supra,* it was said:

"Whatever may be the power of the legislature in waters 'strictly navigable' to fix an arbitrary line beyond which riparian owners cannot go, or to delegate to a municipality that power, I am satisfied that no such right exists in the waters of Grand river at the rapids, or certainly in that part of the waters which are not now navigable for any purpose. The rights of the riparian owner, under our laws, are subject only to the public use for the purposes of navigation; and there is a manifest difference between public streams that can be used successfully for the running of boats and vessels for the purpose of commerce, and those which are only capable of being used for the floatage of lumber and logs in rafts or single pieces. The riparian owners are entitled to the beneficial and sole use of the latter streams, except for floatage; and when such streams have become unfitted for valuable public use, and have actually ceased to be used for public highways, there is no more reason for holding them to be public than in the case of a land highway which has been abandoned and is useless,"—citing *Middleton* v. *Booming Co.*, 27 Mich. 533; *Grand Rapids Booming Co.* v. *Jarvis*, 30 Mich. 308.

See, also, *Lorman* v. *Benson*, 8 Mich. 18 (77 Am. Dec. 435); *East Harbor Sportsman's Club* v. *Kelting*, 4 Detroit Leg. News, No. 18.

It must be conceded that this part of the Detroit river where the defendants were is not navigable. Whatever

rights they may have had to anchor their boat in the deep water of the river, and there hunt wild fowl, we are of the opinion they had no right to go upon the waters which were not navigable, and there anchor and hunt wild fowl. It was the property of the plaintiff, and he had the same right to control it as though it were upland. As was said in *Sterling* v. *Jackson*, 69 Mich. 497 (13 Am. St. Rep. 405):

"Since every person has the right of exclusive dominion as to the lawful use of the soil owned by him, no man can hunt or sport upon another's land but by consent of the owner. It will be conceded that the owner of lands in this State has the exclusive right of hunting and sporting upon his own soil."

And again it was there said:

"The defendant claims that he had the right to shoot the wild fowl from his boat because, as the waters were navigable where he was, he had the right to be there; that, there being no property in wild fowl until captured, if he committed no trespass in being where he was, no action will lie against him for being there and shooting the wild duck. There is a plausibility in the position which, considered in the abstract, is quite forcible, and, if applied to waters where there is no private ownership of the soil thereunder, would be unanswerable. But, so far as the plaintiff is concerned, defendant had no right to be where he was, except for the purpose of pursuing the implied license held out to the public of navigating the waters over his land. So long as that license continued, he could navigate the water with his vessel, and do all things incident to such navigation. He could seek the shelter of the bay in a storm, and cast his anchor therein; but he had no right to construct a 'hide,' nor to anchor his decoys for the purpose of attracting ducks within reach of his shotgun. Such acts are not incident to navigation, and in doing them defendant was not exercising the implied license to navigate the waters of the bay, but they were an abuse of such license."

In that case, the waters were actually navigable, and yet it was held a trespass to erect a "hide" and shoot ducks, for the reason that the ownership of the soil was

in the plaintiff, and the defendant by that act was not using the waters for the purpose of navigation. In the present case, the waters where the defendants were, were confessedly not navigable for any useful purpose. It is true they went there in a boat. They could have done this possibly by poling their boat up a narrow rivulet into the land to the center of the island, if such rivulet had existed, and with as much force contend that, being there in a boat, they could hunt wild fowl. Most certainly the learned circuit judge was in error, if we are to adhere to the doctrine enunciated in *Sterling* v. *Jackson, supra*. In that case the court compared the right of the public to navigate public waters to its right to pass over a highway on land. It was said:

"It does not follow that, because a person is where he has a right to be, he cannot be held liable in trespass. A person has the right to drive his cattle along the public highway, but he has no right to depasture the grass with his cattle in the highway adjoining the land of another person. Also a person has the right to travel along a public highway, but this gives him no right to dig a pit, or remove the soil, or incumber it in front of lands belonging to others. The defendant had the right of using the waters of the bay for the purpose of a public highway in the navigation of his boat over it, but he had no right to interfere with the plaintiff's use thereof for hunting, which belonged to him as the owner of the soil. The public had a right to use it as a public highway, but every other beneficial use and enjoyment belonged to the owner of the soil."

The court, under the facts shown upon this record, should have directed the verdict in favor of the plaintiff for nominal damages.

Judgment is reversed, and a new trial ordered.

The other Justices concurred.