## BALDWIN *v.* ERIE SHOOTING CLUB.

1. HIGHWAYS — NAVIGABLE    WATERS — GREAT    LAKES — SWAMP LANDS.

Where territory some 4,000 acres in extent, lying within the meanders of one of the Great Lakes, and forming a bay or an arm thereof, being covered by water of an average depth of two feet, was surveyed by the general government, and patented to the State as swamp land, and was by the State conveyed to private persons, the same thereby became private property, and a right of passage over it could not be maintained on the ground that it was a public highway.

2. SAME—WAY OF NECESSITY.

One whose land is entirely surrounded by the submerged lands of another is entitled to a way of necessity over the latter, which should not be restricted in its use to the daytime, or so as to exclude his guests.

Appeal from Monroe; Kinne, J.    Submitted February 12, 1901.    Decided July 19, 1901.

Bill by Willis Baldwin to enjoin the Erie Shooting Club from interfering with his passage over certain submerged lands of defendant.    From the decree rendered, both parties appeal.    Modified.

*Ira G. Humphrey* (*Willis Baldwin, in pro. per.*), for complainant.

*De Forest Paine,* for defendant.

LONG, J.    The bill in this case is filed to restrain defendant from interfering with the passage of complainant over the waters of Maumee Bay to reach his own premises, otherwise inaccessible.    The complainant is the owner of an undivided one-half of 80 acres of land situate in Maumee Bay, Monroe county; and defendant owns, or is in possession of under leases of, about 4,000 acres of

land, which entirely surround the land of complainant. The lands of defendant are almost entirely covered by water, and it is complainant's contention that these waters are navigable waters, and free for the public use as a highway.

This identical question in reference to these same lands of defendant was in controversy in the case of *Toledo Liberal Shooting Co.* v. *Erie Shooting Club*, in the United States court of appeals, and is reported in 33 C. C. A. 233, 90 Fed. 680. The testimony in the present case was taken in open court, and is returned in the record here. We find that the conclusions to be drawn from the testimony correspond exactly with the facts found by the Federal court in that case, and, as the facts are set out fully in that case, it will be sufficient to refer to them. It was there found:

"The contention that the waters covering the submerged part of the lands claimed under lease by the Erie Shooting Club are navigable, and therefore subject to the public right of navigation, is not supported by the evidence in this record. The fact that this so-called bay was surveyed and platted as swamp land by the government affords a strong presumption against the navigability of the water thereon. This survey was under the authority of the government, which subsequently conveyed the lands so platted to the State of Michigan as swamp lands, under the act of September, 1850, known as the 'Swamp-Land Act.' That the State subsequently conveyed them is a further circumstance tending to establish that no public easement had or could exist therein by reason of the navigability of the waters thereon. Just where the so-called bay opens into the lake, at its southeast end, there is water navigable for ordinary commercial purposes. This channel rapidly shallows as the bay is penetrated. From a line drawn east and west through the center of sections 34 and 35 to the extreme northern end of this bay, a distance of over three miles, the average depth of water will not exceed two feet. There are places in which it is deeper, but in these it rarely exceeds three feet. There are large sections within the area mentioned where the water does not average twelve inches; and considerable parts, especially in section 27, where it is not six inches in

depth, except under unusual winds or freshets.   An effort has been made to show that there are deeper and navigable channels permeating this shallow marsh.   Several small creeks empty into this bay.   The channels of one or more of these may be traced with difficulty in parts of the marsh.   They soon cease to have any defined banks, and are lost in the wider waters, whose level is affected by the fluctuations of the lake.   It is impossible, upon this evidence, to say that any one of these so-called channels is navigable.   Their continuity is insufficient, and the proof as to their course and depth is altogether too slender and contradictory to justify a reversal of the decree below. From June to October this body of water is covered with a mass of aquatic vegetation, such as wild rice, rushes, etc.   It is then impenetrable, save by the laborious method of punting.   At no time is the greater part of this marsh susceptible of supporting 'commerce,' in any reasonable sense of the term.   That the water stands permanently, and that it has a deep opening into Lake Erie, does not establish that this shallow body of water is capable of sustaining commerce, or is burdened with a public use. It is nothing more or less than a marsh opening into the lake."

Upon those findings, the court found, as a matter of law, as follows:

" To be navigable in law, it must be navigable in fact; that is, capable of being used by the public as a highway for the transportation of commerce.   None of the characteristics of commercial navigability are shown here.   It is the natural feeding ground of the duck and other waterfowl.   In their pursuit by canoe and flat-bottomed ducking boats, the water may be navigated.   That is not commerce, and proves nothing.   The same test would convert every pond and swamp capable of floating a boat into a navigable stream or lake.   This bay is not a highway, never has been, and can never be.   At the common law the term 'navigable' had a technical meaning, and was applied to all streams or bodies of water in which the tide ebbed and flowed.   All such waters were public.   That definition is not applicable in this country, and all waters are held navigable in law, and subject to a public use, which are by their character capable of use as highways for purposes useful to trade or agriculture.   It is the capability of being navigated for useful purposes which is

the test. Gould, Waters, § 54, and cases cited; *Barney*
v. *Keokuk*, 94 U. S. 324; *The Daniel Ball*, 10 Wall. 557,
563; *The Montello*, 20 Wall. 430, 441; *Moore* v. *San-*
*borne*, 2 Mich. 519 ( 59 Am. Dec. 209 ); *Chisolm* v.
*Caines*, 67 Fed. 285; *City of Grand Rapids* v. *Powers*,
89 Mich. 94 ( 50 N. W. 661, 28 Am. St. Rep. 276 ); *Hall* v.
*Alford*, 114 Mich. 165 ( 72 N. W. 137, 38 L. R. A. 205 );
*Rowe* v. *Granite Bridge Corp.*, 21 Pick. 344; *Attorney*
*General* v. *Woods*, 108 Mass. 436 (11 Am. Rep. 380 ).
In the case of *The Montello*, cited above, the court said:

" 'The capability of use by the public for purposes of transporta-
tion and commerce affords the true criterion of the navigability of
a river, rather than the extent and manner of that use. If it be
capable in its natural state of being used for purposes of commerce,
no matter in what mode the commerce may be conducted, it is nav-
igable in fact, and becomes in law a public river or highway. Ves-
sels of any kind that can float upon the water, whether propelled
by animal power, by the wind, or by the agency of steam, are or
may become the mode by which a vast commerce can be conducted;
and it would be a mischievous rule that would exclude either in
determining the navigability of a river. It is not, however, as
Chief Justice Shaw said in *Rowe* v. *Granite Bridge Corp.*, 21 Pick.
344, "every small creek in which a fishing skiff or gunning canoe
can be made to float at high water which is deemed navigable, but,
in order to give it the character of a navigable stream, it must be
generally and commonly useful to some purpose of trade or agri-
culture." '

" If this is a private property, it must follow that appel-
lants have no right to trespass thereon. Their own prop-
erty being inaccessible, save by going over that of appellee,
entitles them to a way of necessity. That they obtained
by the decree below. Decree affirmed."

The court below in the present case held in accordance
with the rule laid down in that case, and we think very
properly, though we do not adopt the language employed
in that case. We had occasion to examine the question
here involved in the case of *Brown* v. *Parker*, *ante*, 390
( 86 N. W. 989 ); and we there held those lands, which
are identical in character with those in suit, to have passed
to the State under the swamp-land act of 1850.

The court below in the present case entered a decree
holding that the waters covering the defendant's lands

were not navigable waters, and did not constitute a public highway, but that complainant was entitled to a way of necessity, and decreed as follows:

"It is ordered, adjudged, and decreed that the said complainant, Willis Baldwin, his heirs, assigns, grantees, and lessees, and necessary workmen for the purpose of making improvements on said premises (but not licensees or guests), shall, for the purpose of going to the said east half of the southeast quarter of section 22, town 8 south, range 8 east, be allowed to go in the daytime over the following property of the said Erie Shooting Club in a boat, entering upon said property out of Bay creek, on section 15 in said township, continuing in a southeasterly direction across sections 15 and 23 in as direct a course as practicable, in view of the depth of water necessary for such purpose, reaching the said east half of the southeast quarter of said section 22 by as direct a route as may be practicable; and they shall be permitted to return, and shall return, in the daytime, from said section 22, by the same route, and in going and returning shall do so in such a manner as shall disturb the wild birds and game upon the said property of the Erie Shooting Club as little as possible."

The decree also enjoined complainant from going over any other of defendant's premises, and granted costs to complainant. Both parties have appealed, the defendant claiming that, under the pleadings, the court was in error in granting a way of necessity. We think the pleadings were sufficient for that purpose.

The court below was not in error in this decree, except in the limitations put upon complainant's right of passage to and from his premises. The decree must be modified in that respect, giving complainant the right to take his guests to and from his premises at any time, night or day, over the route fixed in the decree. The complainant will recover costs of this court.

The other Justices concurred.