### SEWERS v. HACKLANDER.

1. NAVIGABLE WATERS—RIPARIAN RIGHTS.
    Riparian rights reach to the thread of a stream, but cannot extend beyond a near navigable stream to reach one farther removed.

2. SAME—ACCRETION—RELICTION.
    The right to accretion and reliction on one side of the channel of a navigable stream cannot be made to attach to land on the other side of the channel.

3. SAME—RIPARIAN RIGHTS NOT CUT OFF BY ARTIFICIAL CUT.
    An artificial cut, although navigable at times, constitutes no boundary to the riparian rights of the adjoining landowner.

4. SAME—LAND BETWEEN MEANDER LINE AND THREAD OF RIVER OWNED BY OWNER OF ADJOINING LAND.
    The owner of land to the meander line of an inland navigable river holds also the fee of swamp and subaqueous land on the river side of the meander line to the middle thread of the river.

On right of riparian owner on tidal or navigable waters to exclusive fishery, see note in 31 L. R. A. (N. S.) 396.
    On right to trap in navigable stream, see note in 11 A. L. R. 241.
    On right to follow accretions across division line previously submerged by action of the water, see note in 51 L. R. A. 425.
    On the question of meander line, or water line as basis for division of accretions, see note in 12 L. R. A. (N. S.) 687.

5. SAME—RIPARIAN RIGHTS NOT AFFECTED BY SECTION LINES.

In determining riparian rights, section lines are no more regarded than quarter section or lesser lines, and riparian rights go to the thread of the river from the meander line irrespective of section lines.

6. SAME—ORDINANCE OF NORTHWEST TERRITORY.

The ordinance for the government of the territory northwest of the Ohio river, providing that the navigable waters leading into the Mississippi and St. Lawrence should be common highways, has no bearing upon riparian rights and ownership unless there is an interference with navigation.

7. SAME—GAME—RIPARIAN RIGHTS—PRIVATELY OWNED SUBMERGED LAND.

The public has no right to hunt or trap on land privately owned covered by water that will carry a boat, but the owner of the soil is entitled to all profits to be derived from such use as can be made of the premises.

8. SAME—STATUTES—PUBLIC LAND.

The provisions of Act No. 118, Pub. Acts 1921, setting aside the submerged and swamp lands belonging to the State bordering on the Great Lakes and the bayous thereof and those lying along the shores of certain rivers for a public fishing and hunting ground are not applicable to submerged land privately owned.

Appeal from Allegan; Cross (Orien S.), J.    Submitted February 1, 1922.    (Docket No. 123.)    Decided June 17, 1922.

Bill by George J. Sewers and others against John J. Hacklander and others to enjoin an interference with hunting and trapping.    Defendants filed a cross-bill to enjoin trespassing upon their land.    From a decree for defendants, plaintiffs appeal.    Affirmed.

*Lillie & Lillie,* for plaintiffs.

*Wilkes & Stone,* for defendants.

WIEST, J.    Plaintiffs filed the bill herein to restrain

defendants from interfering with their right to trap and hunt in the waters of the Kalamazoo river whereever they can go in a small boat.   Defendants claim the place where plaintiffs demand the right to trap and hunt is owned by the defendant Webster, and by cross-bill asked to have plaintiffs enjoined from trespassing thereon.   The issues involve riparian rights, accretion and reliction rights, and rights of navigation, and hunting and trapping as incidents thereto in the river and the waters over certain lowlands.

The Kalamazoo river in Saugatuck township, Allegan county, was meandered by government surveyors when the section lines were run in 1833, and, as was usual, flats covered by water, as well as bogs, bayous and swamps along the river were put on the river side of the meander line, and fractional sections of upland bordering the other side of the meander line were designated as lots and numbered and the acreage thereof indicated.   Lots 3 and 4 of section 14, town 3 north, range 16 west, were so designated and constitute the land lying between the Kalamazoo river at the south and Silver Lake at the north, with the meander line at the west and south.   These lands are owned by defendant Webster.   A natural navigable channel from Silver Lake joins the river some distance west of these lots and near the center of section 15.   Lots 3 and 4, on the west and south, front swamps, flats, bayous and sloughs, lying between the lots and the main channel of the Kalamazoo river and the channel from Silver Lake to the river.

C. S. Methven owns about two acres of land in the extreme northeast corner of section 15, lying north of the channel from Silver Lake to the river, and some of the plaintiffs have a lease of his riparian rights. Defendants Hacklander and Schaeffer have a lease of defendant Webster's riparian rights.   These leases

are, however, of little moment and do not affect the real issues in the case.

The disputed premises consist of a triangular parcel of low and in some places subaqueous land lying immediately west of the meander line of lots 3 and 4 and between the river and the natural channel from Silver Lake and west to where the river and such channel join. There is some question raised to the effect that this lowland is an island, but the testimony does not bear this out and does show that by reliction and accretion the lowland and marsh reaches out from defendant Webster's lots. As between the parties to this suit the title to the marsh in question rests upon the riparian ownership of Mr. Methven or Mr. Webster.

As we understand the record there is a well defined and natural and navigable channel from Silver Lake to the river, and this channel lies between the land of Mr. Methven and the marsh in question. This navigable channel cuts Mr. Methven off from claiming riparian rights in the marsh on the other side of the channel. This lowland belongs to some proprietor. To bring it to Mr. Methven would cause his riparian rights to jump the channel opposite his land and seek a more distant channel. This cannot be done. Riparian rights reach to the thread of the stream but cannot extend beyond a near navigable stream to reach one farther removed.

The right to accretions and reliction on the south side of the channel cannot be made to attach to land on the north side of the channel. Accretions cannot leap the natural navigable channel but must gradually and imperceptibly form and attach themselves to the main land. The navigable channel from Silver Lake to the river, lying between the accretions and the land of Mr. Methven, makes it impossible for the accretions to attach to his land. We must hold that Mr.

Methven's riparian rights do not extend south of such channel.

Plaintiffs claim there is a navigable channel cutting off defendant Webster's land from the marsh and that Mr. Webster cannot assert riparian rights to the marsh beyond such channel. For some time there was a cut from Silver Lake to the river, along the west side of lots 3 and 4, but the evidence shows that this cut was man-made about 50 years ago and in places has been filled in to make drives to the marsh. Plaintiffs also contend that this cut or channel makes the marsh "no man's land." Such contentions must rest upon the public nature of such cut.

It is stated in Hale's de Jure Maris, cap. 3 (see Moore on the Foreshore, page 375):

"If any person at his own charge makes his own private stream to be passable for boats or barges, either by making of locks or cutts, or drawing together other streams; and hereby that river, which was his own in point of propriety become now capable of carriage of vessels; yet this seems not to make it juris publici, and he may pull it down again, or apply it to his own private use. For it is not hereby made to be juris publici, unless it were done at a common charge, or by a publick authority, or that by long continuance of time it hath been freely devoted to a publick use."

Previous to the making of the cut there was no passage at such place except for small boats in times of high water. This cut, opened by man and enlarged by the action of the water and filled from time to time for driveway purposes, constitutes no boundary to the riparian rights of the owner of lots 3 and 4.

In this State the law is well settled that the owner of land to the meander line of an inland navigable river holds also the fee of swamp land and subaqueous land on the river side of the meander line to the middle thread of the river. We cite but a few of the

holdings of this court on the question.  *Rice* v. *Ruddiman,* 10 Mich. 125; *Hall* v. *Alford,* 114 Mich. 165 (38 L. R. A. 205) ; *Fuller* v. *Bilz,* 161 Mich. 589; *Johnson* v. *Burghorn,* 212 Mich. 19; *Sterling* v. *Jackson,* 69 Mich. 488 (13 Am. St. Rep. 405).

In *Grand Rapids, etc., R. Co.* v. *Butler,* 159 U. S. 87 (15 Sup. Ct. 991), the court quoted with approval the following from *Hardin* v. *Jordan,* 140 U. S. 371 (11 Sup. Ct. 808, 838) :

" 'It has been the practice of the government from its origin, in disposing of the public lands, to measure the price to be paid for them by the quantity of upland granted, no charge being made for the lands under the bed of the stream or other body of water.   The meander lines run along or near the margin of such waters are run for the purpose of ascertaining the exact quantity of the upland to be charged for, and not for the purpose of limiting the title of the grantee to such meander lines.' "

The court also stated that:

"In Michigan the common law prevails, and the rule is sustained by an unbroken line of authorities that a grant of land bounded by a stream, whether navigable in fact or not, carries with it the bed of the stream to the centre of the thread thereof."

At the time the government survey was made and the meander line run this lowland was evidently considered worthless, but since then by way of giving the river freer vent into Lake Michigan reliction has followed and the land is now above the water in places. We are of the opinion that the premises in suit attached to lots 3 and 4 by accretion and reliction, and defendant Webster must be held to be the riparian owner of all swamp and lowland, sloughs and bayous from the meander line of his lands to the thread of the main channel of the Kalamazoo river and the branch channel from Silver Lake to the juncture of the Silver Lake channel and the river channel.

It is insisted by plaintiffs that lots 3 and 4, being on section 14, do not admit, under the law, of any claim by the owner thereof to riparian rights in the marsh on section 15.    No authority to such effect has been cited.    In determining riparian rights section lines are no more regarded than quarter section or lesser lines.    The riparian rights go to the thread of the river from the meander line.    This brings us to two questions asked by plaintiffs:

"(1) What are the rights of the plaintiffs in and upon navigable inland waters, whenever and wherever the same are navigable in fact and whether the rights of hunting, fishing and trapping are incident to the right of navigation in and upon such inland navigable waters wherever and whenever the same is navigable in fact?

"(2) If the court finds that these plaintiffs have no right in and upon the bays, bayous, inlets and the cuts adjacent to and emptying into the main channel of the Kalamazoo river, then the question arises as to what are the rights of the plaintiffs in and upon the main channel of the Kalamazoo river whenever and wherever the same is navigable in fact and whether the rights of hunting, fishing and trapping are incident to the main channel of the Kalamazoo river?"

My Brethren are of the opinion that the pleadings do not bring before us the question of the right of the plaintiffs to fish from a boat in the waters covering the premises in suit, and, therefore, we express no opinion thereon.

The learned circuit judge dismissed the bill, and upon defendants' cross-bill enjoined the plaintiffs from trapping or hunting on the premises in question. The trial judge found, and rightly so, that the Kalamazoo river is navigable in fact.    The river being navigable, plaintiffs have a right to the use thereof with all the privileges incident to navigation.    But what are such privileges?    Plaintiffs invoke, in aid of their

claim, the water highway rights declared in the ordinance for the government of the territory northwest of the Ohio river, as follows:

"The navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways, and forever free, as well to the inhabitants of the said territory, as to the citizens of the United States, and those of any other States that may be admitted into the confederacy, without any tax, impost or duty therefor." 1 Comp. Laws 1915, p. 103.

This provision has been before the courts, State and Federal, many times, and has been held to have no bearing upon riparian rights and ownership, except there is an interference with navigation. The ordinance left the rights of riparian owners to be settled according to the principles of State law. *St. Louis* v. *Myers,* 113 U. S. 566 (5 Sup. Ct. 640) ; 1 Bouvier's Institutes, § 430; *Palmer* v. *Commissioners of Cuyahoga Co.,* 3 McLean (U. S.), 226; *Gavit* v. *Chambers,* 3 Ohio, 496; *Webber* v. *Boom Co.,* 62 Mich. 626. The ordinance accomplished no more than to preserve the rivers as common highways and in no sense prevented the State from granting the soil to private owners.

Some of the questions here presented are almost as old as the history of the law, and laws and commentaries thereon are to be found in the laws of Solon, Gaius Institutiones Juris Civilis, Justinian's Digest, Blackstone's Commentaries, Grotius and Pufendorf. When King John met the irate barons by appointment, in the "fair, large meadow called Runnimede," and, to save his kingship, ratified Magna Charta, his overlordship of rivers was materially cut down.

In the Mirrour of Justices we find under the title "Of Hunting:"

"To an action of hunting, chasing or fishing, he may plead, that he hath done no wrong, for it is his right

to hunt there, or to chase, or it is his common piscary belonging to his manor of such a place, etc." Mirrour of Justices, chap. 3, § 31.

Have the plaintiffs a right to hunt and trap wherever the waters covering defendants' lowland will carry a boat? So far as hunting from a boat is concerned the question is answered in the negative by the opinion of this court in *Sterling* v. *Jackson, supra,* and the answer to trapping is also in the negative. *Johnson* v. *Burghorn, supra.* See, also, *Ainsworth* v. *Hunting & Fishing Club,* 153 Mich. 185 (17 L. R. A. [N. S.] 1236, 15 Ann. Cas. 706, 126 Am. St. Rep. 474), and the same case in 159 Mich. 61; *Hall* v. *Alford, supra.*

It is stated in 12 R. C. L. p. 688:

"It has been contended that navigable waters are open to hunting and fowling by all members of the public, subject to such regulations as may be imposed by the State, but in the cases in which the question has actually been adjudicated, it is held that the real test as to the public right of fowling is the public or private ownership of the soil beneath the waters, and if it is shown that the soil is privately owned the owner has the exclusive right of fowling. The mere fact that one has the right to pass along a stream in a boat gives him no right to shoot fowls where the soil beneath the water is privately owned."

In *Knudson* v. *Hull,* 46 Utah, 114 (148 Pac. 1070), it was held:

"The defendant's right to hunt and fish on the river may be conceded. That, however, does not give him the right to hunt and fish on waters on plaintiff's land, caused by overflows, or on sloughs, marshes, lakelets or other waters on the lands, not a part of the natural channel of the river."

See, also, *Schulte* v. *Warren,* 218 Ill. 108 (75 N. E. 783, 13 L. R. A. [N. S.] 745).

As owner of the soil defendant Webster is entitled to all profits to be derived from such use as can be

made of the premises. Muskrat houses dot the marsh and the pelts of these animals command a ready sale and many of plaintiffs are commercial trappers and claim, if they are kept off this marsh, they will be deprived of great gains. But such gains are gathered where they have no right to reap.

Cases may be found wherein the rule has been laid down as contended by plaintiffs. *Diana Shooting Club* v. *Husting*, 156 Wis. 261 (145 N. W. 816, Ann. Cas. 1915C, 1148) ; *Forestier* v. *Johnson*, 164 Cal. 24 (127 Pac. 156). The dividing line of the cases appears to rest upon whether the title in the soil in navigable waters is in the State in trust for the use of the public, or in riparian proprietors. A good illustration of the rule where such title is in the State is found in *State, ex rel. Thompson*, v. *Parker*, 132 Ark. 316 (200 S. W. 1014).

Tiffany on Real Property (2d Ed. vol. 1), pp. 1035-1039, so well states the law upon the subject here involved that we quote therefrom:

"SEC. 308. Animals. The owner of land has no right of property in animals *feræ naturæ*, or wild animals, merely because they are upon the land. He may, however, acquire a qualified ownership in them—that is, an ownership while remaining in his possession or control—by their capture, and an absolute ownership by killing them.

"The owner of land has the exclusive right to kill the animals on the land, unless another has acquired the right by grant or its equivalent, such other then having a right in the nature of a profit *a prendre*. If animals are wrongfully killed on the land by another, they become the property, it seems, of the landowner. That one has the right to navigate over land of another, or to pass over a highway thereon, would seem properly to give no right to kill game thereon. But it has, in two States, been decided that the right to kill game is incident to the right of navigation, without, it is submitted, any adequate explanation of why this should be so."

Our attention has been directed to the provisions of Act No. 118, Public Acts 1921, setting aside the submerged and swamp lands belonging to the State of Michigan bordering on the Great Lakes and the bayous thereof and those lying along the shores of the Kalamazoo, Grand and Muskegon rivers for a public fishing and hunting ground. The title to the premises in suit being in the defendant Webster and not in the State of Michigan, the provisions of this act have no applicability to the case at bar. The defendant Webster has the right to use his land under water, the same as land above water, so long as he does not interfere with the right of navigation. He cannot interfere with the use of the river as a highway any more than he can with any other highway; it is his property, however, and he is entitled to protection in his use thereof and the profits to be derived therefrom, and plaintiffs have no right to enter upon the same for the purpose of hunting or trapping.

Upon due consideration of the points advanced by plaintiffs and an examination of the cases cited, and many others, we see no reason to recede from previous holdings in this State. The defendant Webster as owner of the submerged land had an undoubted right to the profits to be derived therefrom, and plaintiffs had no right to enter thereon for the purpose of shooting wild fowl or to trap and hunt water animals any more than they would have to do so on his upland. Hunting and trapping are not incidents of the right of navigation.

The decree in the circuit court is affirmed, with costs to defendants.

FELLOWS, C. J., and CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.