### GIDDINGS *v.* ROGALEWSKI.

1. WATERS AND WATERCOURSES — PRIVATE LAKE — MEANDERED WATERS—BURDEN OF PROOF—TRESPASS.

    In an action of trespass *quare clausum fregit*, where defendant, in his notice, alleged that a small, shallow, inland lake, without inlet or outlet, wholly upon plaintiff's premises, was "public, meandered, and navigable waters," and claimed the right both to fish and go over plaintiff's premises to reach it, for that reason, the burden of proving his allegation was upon defendant.

2. SAME—PRESUMPTIONS.

    No presumption that it is meandered arose from its size, location, or relation to other waters, and, in the absence of direct proof, all inferences are to the contrary.

3. NAVIGABLE WATERS—DEFINITION.

    The test of navigability is whether the waters under consideration are capable of being used by the public as thoroughfares or highways for purposes of commerce, trade, and travel by the usual and ordinary modes of navigation.[1]

4. SAME—PRIVATE WATERS.

    A small, unmeandered, shallow, and disconnected sheet of water, wholly upon the premises of a private owner, and which can only be reached by invading private premises, is not navigable.

5. TRESPASS QUARE CLAUSUM—FISH AND GAME LAWS.

    The right of the State, under its police power, to enforce the fish and game laws upon the lands of a private owner does not take away the owner's right to maintain trespass against those who invade his close without permission for the purpose of fishing.

6. SAME—RIGHT OF ACTION—NOMINAL DAMAGES.

    Every unauthorized intrusion upon private lands is a trespass for which the owner has a right of action, and is entitled to at least nominal damages.

---

[1]Generally, on the question of navigability of bodies of water, see note in 42 L. R. A. 305.

Error to Kent; Perkins, J. Submitted June 12, 1916. (Docket No. 38.) Decided July 21, 1916.

Trespass *quare clausum fregit* by Alfred Giddings against Theodore Rogalewski. Judgment for plaintiff on a directed verdict. Defendant brings error. Affirmed.

*Rodgers & Rodgers*, for appellant.

*H. Monroe Dunham* and *John M. Dunham*, for appellee.

Steere, J. This is an action of trespass *quare clausum fregit*, which was originally commenced in justice's court and found its way to the circuit court of Kent county where, upon second trial in that court, it was disposed of by a judgment on directed verdict against defendant of six cents, as nominal damages for unlawful entry upon plaintiff's premises. Considering himself aggrieved, defendant has appealed to this court for a review of the judgment by a writ of error containing 12 assignments, the essence of his grievance being that the court erred as a matter of law in holding him guilty, under the evidence, of even technical trespass.

The testimony disclosed that upon the day charged, August 6, 1913, defendant, though uninvited and previously forbidden, entered plaintiff's close and traversed a portion of it to reach a small lake in the interior of and entirely surrounded by plaintiff's land, upon the margin of which he remained for a time engaged in angling, curtly refusing with defiant response to desist and withdraw when warned away by plaintiff's wife. His then asserted right to thus go and remain upon plaintiff's private premises was, as formulated into more gracious phraseology by his special notice under a plea of the general issue—

"that if he entered plaintiff's close as set forth in plaintiff's declaration, he entered for the purpose of fishing in public, meandered, and navigable waters of this State."

The waters in relation to which this public right is asserted are locally known as "Giddings' Lake." This lake is located upon and entirely surrounded by a farm of 240 acres belonging to plaintiff, lying in the west half of section 1 of Solon township, Kent county, Mich., and comprising the S. W. ¼ and S. ½ of the N. W. ¼ of said section. The lake is estimated to cover from 20 to 25 acres. Plaintiff testified that it had an irregular margin, and approximated its dimensions as "60 rods north and south with a varying width east and west of about 20 rods. While the depth varies, it is nowhere deep. Portions of its margin are marshy, and at some places it is shallow for several rods from shore, while at others it deepens more rapidly. The general depth off shore is estimated as 8 or 10 feet, with places towards the easterly shore where a depth of from 12 to 16 feet is found. It is concededly boatable over its limited surface beyond the shore shallows. Plaintiff had owned most of the land inclosing this lake for more than 30 years, and all the land under and around it for over 20 years. The shortest distance from any point around the lake to lands belonging to others, or to a highway, is at the south end, which is from 35 to 40 rods north of the section line. It is entirely surrounded by an unbroken shore, and no surface streams flow into or out of it. Over 30 years ago plaintiff planted some fish in the lake, perch, blue gills, bass, and other kinds, obtained by him from a stream which he states was "north of Sand Lake," where there is, or was, a mill "and they catch the fish with nets." On two or three subsequent occasions he supplemented his original planting with some wall-eyed pike and bass, obtained for him by a rural

192 Mich.—21.

mail carrier named Roscoe from the State hatchery. Plaintiff testified· that while he never fished in the lake himself, fish are yet there and he kept a rowboat at the north end, pulled up on the shore near his home when not in use, with and from which his wife and other members of his family sometimes rowed around and fished in the lake.

For the purpose of draining some low, marshy land lying south of the lake, plaintiff started to dig a ditch some 60 rods long southerly through this swamp to lead across the highway south of his property to a small stream called White creek, which flowed through the farm of a neighbor to the south, in section 12. Without obtaining permission from the owner of the intervening land at the south, he began the ditch at the highway on the south side of his farm and dug it north through the land he desired to drain to within 4 or 5 rods of the lake, as he testified, and stopped there because he did not want to drain or lower the lake or connect it with other waters. The ditch remained in this condition for nearly 10 years, plaintiff being unable to obtain permission to extend it across the highway and through intervening high land to the south; but about 10 years before this action was begun, he obtained the desired consent and connected the ditch with White creek. At the time of the trial the distance from the north end of the ditch to the lake was shown to be about 49 feet.

It was claimed by the defense that after the ditch was extended southerly to White creek a subterraneous channel developed through the intervening bank of the lake to the north end of the ditch, affording connecting waters by which fish could and did pass in and out of the lake to and from White creek, the waters of which by intervening creeks and rivers connected with Lake Michigan. This was denied by plaintiff, and the case appears to have progressed largely on the theory

that whether or not such subterraneous channel existed was the controlling question, much of the testimony introduced by both sides being devoted to that issue. Without going into details as to what occurred during the trial touching that question, it is sufficient to state that the court ultimately took it from the jury and directed a verdict for plaintiff as stated. It appears beyond question that, against plaintiff's personal protest and posted warnings forbidding trespassing, defendant and others who were ardent witnesses in his behalf persisted in invading plaintiff's demesne, going back and forth upon his private premises and around this lake when and as they pleased, for the ostensible purpose of fishing in its waters, claiming the right to do so because, as defendant stated, "there were State fish in that lake." For the defense it is urged that, if not conclusively shown, the question whether fish could freely migrate to and from this lake to other waters was at least an issue which should have been submitted to the jury; that if it was found they could and did, plaintiff had acquired no property in them, and the ownership was in the whole people of the State, as held in *People* v. *Collison,* 85 Mich. 105 (48 N. W. 292) ; *People* v. *Horling,* 137 Mich. 406 (100 N. W. 691), and other authorities cited, and defendant had the right both to fish for them in those waters and go over plaintiff's private premises to reach them, under sections 5859, 5860, 2 Comp. Laws (2 Comp. Laws 1915, §§ 7694, 7695), which provide as follows:

"SECTION 1. *The people of the State of Michigan enact,* That in any of the navigable or meandered waters of this State where fish have been or may hereafter be propagated, planted or spread at the expense of the people of this State or the United States, the people shall have the right to catch fish with hook and line, during such seasons and in such waters as are not otherwise prohibited by the laws of this State.

"SEC. 2. No action at law shall be maintained against

any persons entering upon such waters for the purpose of such fishing, by the owner, lessee or persons having the right of possession of adjoining lands, except for actual damage done. In any such action, the defendant under proper notice may dispute on the trial the plaintiff's right to either title or possession of the land claimed to be trespassed upon."

We find no proof in this record to sustain defendant's allegation in his notice under a plea of the general issue that these are meandered waters. If true, the plat and field notes of the government survey of that township would presumably demonstrate the fact to a finality. The burden of proving the allegation was upon defendant. This comparatively small and shallow sheet of water lies in the interior of a single section, no government run line of which would touch or come near it. No presumption that it is meandered arises from its size, location, or relation to other waters. In the absence of direct proof all inferences are to the contrary.

The grounds upon which it is contended this lake is "navigable waters" are that it is boatable, and that fish frequenting it can pass in and out by an underground channel connecting with other waters. Both facts, if shown, fail to furnish the test of navigability. The true test is whether the waters under consideration are capable of being used by the public as thoroughfares or highways for purposes of commerce, trade, and travel—of affording a common passage for transportation and travel by the usual and ordinary modes of navigation. *Moore* v. *Sanborne*, 2 Mich. 519 (59 Am. Dec. 209) ; *Tyler* v. *People*, 8 Mich. 320; 59). This small, unmeandered, comparatively shal-*Baldwin* v. *Shooting Club*, 127 Mich. 659 (87 N. W. low and disconnected sheet of water, entirely surrounded by the single farm of a private owner, and which can only be reached by invading private premises, does

not possess these essential attributes. The public right of access to such waters at some point is manifestly an important, if not determinative, factor in the law of navigability. It is difficult to conceive of a highway beginning, extending its whole length, and ending, in the interior of the private estate of a single owner.

That fish, bred in and frequenting private waters, may nevertheless pass back and forth to and from other waters by some connecting water and thus, like wild animals, be or become *feræ naturæ,* and consequently belong only to the State, though subject to capture in season and in prescribed manner by all those who have a right to be where they are found and captured, does not give the right to invade and trespass upon private premises in order to reach them, although the State may have jurisdiction over private waters to enforce the fish laws and control the manner and time of their taking, as it has over private lands to enforce the game laws. Aside from the claim that this lake is open to the public for fishing purposes, and plaintiff's farm is a highway to reach it, no question is made as to his ownership, title, and right to exclusive possession of all the land around and under the lake. The jurisdiction of the State to enforce the fish and game laws there under its police power does not, and cannot, take away his right to maintain trespass against those who invade his close without permission, especially when forbidden, and wander over his private premises in pursuit of fish or game.

The right of the people to fish in navigable or meandered waters where fish are propagated, planted, or spread, and to which they have lawful access by land or water, even though such waters may superimpose the subaqueous lands of a private owner, is not decided nor involved here.

Every unauthorized intrusion upon the private premises of another is a trespass, and to unlawfully invade lands in his possession is "to break and enter his close" and destroy his private and exclusive possession. The party whose private possession has been thus interfered with has a right of action for the protection of his property, and is entitled to at least nominal damages, which are presumed to follow from such invasion of another's rights.

The judgment is affirmed, with costs.

STONE, C. J., and KUHN, OSTRANDER, BIRD MOORE, BROOKE, and PERSON, JJ., concurred.