WINANS *v.* WILLETTS.

1. NAVIGABLE WATERS—TEST OF NAVIGABILITY.

An unmeandered body of water, covering 100 acres, which has no inlet except small spring-fed streams, has an outlet connecting through various bodies of water with a large lake, and through which fish can pass and a small boat can be floated, has a highway around it extending to the low-water mark, and most of the land underneath which, as well as the land bordering on it, is owned by one person, is not a public navigable body of water but a privately owned pond. KUHN, C. J., and FELLOWS, J., dissenting.

2. SAME—TRESPASSERS, WHO ARE.

Persons who have no right or license from the owners or part owners of a private pond to fish therein and enter for such purpose are trespassers, whether they enter from a highway or elsewhere. KUHN, C. J., and FELLOWS, J., dissenting.

3. SAME—TRESPASSERS—CUSTOMS—NOTICE.

Persons who have not been misled by any custom of public fishing in a privately owned pond or by any failure to notify them that a public license to continue to fish therein has been withdrawn are not justified in trespassing on such property for fishing purposes. KUHN, C. J., and FELLOWS, J., dissenting.

4. SAME—TRESPASSERS—STATE CONTROL OF FISH.

The fact that there may be fish in a privately owned pond which are not the private property of the owner of the pond or any one else and that the State may control the taking of fish therefrom does not warrant trespassing upon such property for fishing purposes. KUHN, C. J., and FELLOWS, J., dissenting.

5. SAME—TRESPASSERS—INJUNCTION—CONTINUING TRESPASS.

An injunction against trespassing upon the water of a private pond for fishing purposes is proper where there is such an assertion of right by defendants and such conduct that continuing trespasses might be anticipated.

6. SAME.

Informality in an arrangement among those interested

under which one of the heirs of an estate is in possession of the property, including a private pond, and is expected to protect the estate from trespassers, cannot avail persons trespassing on the lake for fishing purposes.

7. SAME.

The fact that the right to fish in a private pond belonging to an estate has been granted to another by the heir who is in possession under an arrangement among those interested does not prevent a suit by the heir to restrain a trespass upon such water for fishing purposes.

8. SAME.

Whether an injunction against trespassing upon a private fishing pond is perpetual is immaterial, and it should continue until such time as the defendants, or some of them, have secured the right to invade the property, and will not prevent them from securing or exercising the right when obtained.

Appeal from Livingston; Miner, J. Submitted January 22, 1917. (Docket No. 50.) Decided July 30, 1917.

Bill by George G. Winans against David O. Willetts and others to restrain a trespass upon a private pond. From a decree for plaintiff, defendants appeal. Affirmed.

*Louis E. Howlett*, for plaintiff.

*A. J. Sawyer, F. A. Shields,* and *B. M. Thompson,* for defendants.

OSTRANDER, J. Paragraphs 1, 2, 3, and 5 of the bill of complaint are here set out:

"(1) That there is located in the township of Hamburg, Livingston county, Mich., on the west half of section No. 14 and the east half of section No. 15 a small body of fresh water known as Winans lake, covering about 100 acres of land; that said body of water is one of the finest lakes in southern Michigan entirely surrounded by a highway and a good shore and

197—Mich.—33.

is well stocked with fish and is a valuable piece of property.

"(2) That your orator is the owner in fee simple of all the land to the high-water mark under the water of the said lake, except a small parcel on the east shore thereof, of which land your orator has a lease from the tenant thereof of all the land under the water upon said east shore; that he is either the owner in fee simple or the lessee and in possession of all the land covered by the waters of Winans lake to the high-water mark thereof; that he is also the owner of about 300 acres of real estate adjacent to said lake and the owner of cottages located upon the shores thereof, which cottages are used by him and his friends and tenants as summer homes.

"(3) He shows that no other person or persons own any of the lands under the waters of said lake, and that there are no riparian owners thereof except himself. He further shows that there is no natural outlet to the waters of said lake and no outlet [inlet?] thereto except small ditches draining the adjacent lands. * * *

"(5) He further shows unto the court that David O. Willetts, Willis G. Johnson, and La Verne O. Cushing, all of whom are residents of the city of Ann Arbor, have from time to time for a period of two or three years last past been in the habit of coming upon your orator's premises without his permission or consent and going upon said lake with their boats and fishing outfits and with their friends and agents and traversing the waters of said lake, taking fish therefrom, crossing your orator's premises, and denying him the right to control his own premises; that your orator has asked the said above-named parties who are made defendants to this bill to desist and refrain from trespassing upon his property as aforesaid, and that they deny your orator's rights to control his own property, and that they threatened to continue with their acts of trespass as heretofore stated, unless restrained from so doing by an order of your honorable court."

At the hearing in the court below the plaintiff moved for leave to amend the bill of complaint, and, receiv-

ing leave to do so, over objections which are repeated and urged on this appeal, stated the proposed amendment as follows:

"The amendment, I propose, is to strike out of the second paragraph the sentence reading, 'That he is either the owner in fee simple or the lessee of all the land covered by the waters of Winans lake to the high-water mark thereof,' and insert instead of that the following: 'That the lands on the southerly and westerly parts of said lake are owned by the plaintiff and his brother, Edwin B. Winans, Jr., subject to a dower interest therein owned by their mother, all of which lands he is in possession and has control thereof, except the dwelling house in which his mother resides; that he is either, the owner in fee simple or the lessee or the joint owner and in possession of all the land covered by the waters of Winans lake to the high-water mark thereof.'"

The prayer of the bill is that the said defendants be restrained, temporarily and permanently, from entering upon said premises without plaintiff's permission. Defendants filed a joint answer, in which they admit the existence of the lake, that it is surrounded by a public highway, and they say that the boundary of the highway extends on the lake side to the low-water mark of the lake, and aver that any person rightfully upon the highway can rightfully pass over the waters of the lake in a boat without trespassing on the lands of any riparian owner. They aver, further, that the highway was established, constructed, and maintained by the public. They deny that plaintiff is the owner of all the land under the waters of the lake to the high-water mark except a small portion on the east side, or that he is the owner of all the land or the lessee thereof under the water of the lake. They aver that more than one-third of the shore of the lake on the east side is owned in fee by the heirs and estate of George Hull, deceased, and that those lands have been in the actual exclusive posses-

sion and control of said George Hull and his grantors for more than 30 years, and deny that plaintiff has any valid lease for the lands under the waters of the lake in front of the lands of the said George Hull, deceased, and deny that he is now, or has at any time during the last 5 years been, in actual or exclusive possession of any of the lands of the said George Hull bounded on the said lake above, or under the waters thereof. They deny that no other person than the plaintiff is the owner of any lands under the waters of the lake, saying again that the heirs and estate of George Hull, deceased, own in fee simple more than one-half the east shore of the lake and the land under the waters thereof to the low-water mark, and as owners they and their grantors have enjoyed the legal right for more than 30 years to go upon the waters of the lake and fish therein, and that no portion of the lands belonging to the heirs and estate of the said Hull, deceased, is now, or ever has been, in the possession of the plaintiff. They deny that there is no natural inlet or outlet to the lake, but aver that there is such an inlet and such an outlet. The defendants deny that they, or either of them, have at any time during the last 3 years gone upon the waters of the lake by passing over the land of plaintiff. They admit that they have gone upon the waters of the lake and fished therein, but say that in so doing they have in every instance gone over the lands belonging to the heirs and estate of the said George Hull, deceased, and have in every instance first obtained a permit and license so to do from said heirs and estate of the said Hull, deceased.

The cause came on to be heard in open court, testimony was taken therein as in a suit at law, and a decree favorable to plaintiff, and from which he has not appealed, was entered. Defendants have appealed.

Plaintiff says the only question involved is whether

or not "a man who owns the bed of the lake, even though it has an outlet through which fish may pass and repass, may control it and keep others from trespassing thereon."

For the defendants it is said that the testimony does not support the contention that plaintiff is the owner or lessee of all of the land above or below high-water mark, but that, if he is owner or lessee of the entire bed of Winans Lake, and as such a riparian owner has the exclusive right to fish in the lake, he cannot maintain this action because he has leased the right to fish in the lake to the Pleasant Lake Club, a private lease. It is contended further that the undisputed facts show that Winans lake is a part of the navigable waters of the State, and any person navigating these waters from Lake Erie through and upon the Huron river and so through the connecting waters of Strawberry and Zukey lakes is rightfully upon the water and may fish therein from his boat. Finally, it is contended that, if Winans lake is, in fact, a private pond, plaintiff has not given such a notice to the public not to fish in its waters as to revoke the license which the public by custom had to fish there.

Winans lake used to be called Pleasant lake. There is no evidence that it is a meandered body, and there is only one line recorded in the government survey, which is the section line between sections 14 and 15. The water covers a part of the southeast quarter of the northwest quarter, also the northwest quarter of the southwest quarter, and the northeast quarter of the southwest quarter, and the southeast quarter of the southwest quarter and the southwest quarter of the southwest quarter, and the southwest quarter of the northwest quarter of section 14. On some of the subdivisions the water only covers a slight part thereof. On section 15 it covers a portion of the east half of the northeast quarter, the northeast quarter of the

southeast quarter, the southeast quarter of the southeast quarter, and the west half of the southeast quarter, about 160 acres in all. There is a small outlet from the lake, and, whether it was originally an artificial or a natural passage for the water, it has existed for many years, water running to Gut lake, some 24 rods away, from thence to Zukey lake, and from thence, not directly, but finally, to the Huron river. Fish can pass from the Huron river to Winans lake by the various connecting waterways. A boat, if small enough, might be floated from Lake Erie to and upon Winans lake, which lake has, however, no inlet except small, spring-fed streams. From a public highway one may step into the waters of the lake or into a boat upon the surface of the lake.

It is plain, however, that the lake is not a public, navigable body of water, and is a privately owned pond. *Giddings* v. *Rogalewski*, 192 Mich. 319 (158 N. W. 951), and cases cited. Defendants have no right or license, from any owner or part owner of the property, to fish therein, without which, whether they enter the premises from a highway or elsewhere, they are trespassers. They have not been misled by any custom of public fishing in the pond or any failure to notify them that a public license to continue to fish there had been withdrawn. *Marsh* v. *Colby*, 39 Mich. 626 (33 Am. Rep. 439). The fact that there may be fish in the lake, not the private property of plaintiff or of any one else, and that the State may control the taking of fish therein, does not avail the defendants. They can no more enter without permission the portions of the premises covered by water than they can invade the uplands of the riparian owners. *Sterling* v. *Jackson*, 69 Mich. 488 (37 N. W. 845, 13 Am. St. Rep. 405) ; *Hall* v. *Alford*, 114 Mich. 165 (72 N. W. 137, 38 L. R. A. 205) ; *Giddings* v. *Rogalewski, supra.*

Except as costs are involved, the enforcement of

the decree according to its terms can affect no right or privilege which defendants, or either of them, possess. It is not of the slightest consequence to them whether the plaintiff does, or does not, possess all of the rights which he asserts. They have no business fishing in the lake without permission, and permission they do not claim to have. However, since they have been invited, if not forced, into court, and since a decree for costs against them has been entered, I must inquire whether plaintiff is technically or otherwise entitled to the relief granted by the decree.

There is evidence of such an assertion of right by defendants and such conduct that continuing trespasses might be anticipated, to prevent which a court of equity may grant an injunction. There is such evidence of a family arrangement, to which plaintiff, his brother, and his mother are parties, by which plaintiff is in such possession and control of the Winans estate, and expected, if not under obligation, to protect and defend it from trespassers, that defendants ought not to be permitted to profit by any want of formality in the arrangement. And although the right to fish in the lake may have been granted by plaintiff to the Pleasant Lake Club, this fact does not prevent plaintiff from preventing, by proper action, trespasses upon his property. So also it is quite unimportant whether the injunction granted is in form perpetual. It should continue until such time as defendants, or some of them, have secured the right to invade the property and will not prevent them from securing or from exercising the right when obtained.

As I understand the record, however, plaintiff has not shown himself to be owner, or lessee in possession, of all of the land covered by the waters of the lake. In such case, of course, defendants might prove a license to fish in the lake, and it would then be a question for decision whether, possessing such a

license, the licensee could fish in any part of the lake. No such question is presented upon this record.

No reason for disturbing the decree is seen, and it is affirmed, with costs to appellee.

STONE, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred with OSTRANDER, J.

FELLOWS, J. I am unable to agree with Mr. Justice OSTRANDER in this case, and will briefly state my reasons.

I do not conclude from this record, measured by the holdings of this court, that Winans lake is a non-navigable body of water, or that its outlet is a non-navigable stream. The lake itself covers 100 acres, and is certainly a floatable body of water. Its outlet connecting it with Gut, Zukey, and Strawberry lakes flows into Huron river and Lake Erie. The fact that this outlet has a capacity sufficiently large to allow small boats to come up stream into Winans lake demonstrates to my mind that it has sufficient capacity to float logs down stream. It therefore has a sufficient capacity, a sufficient capability, to perform a valuable service to the public. If it has the capability of such valuable use, it is not of importance that it is not now so used. Its capability determines its character and fixes the rights of the parties; its use or nonuse does not change its character. I entertain no doubt that millions of feet of forest product have been floated to mill and market through lakes and streams much more inconsequential than this lake and outlet without a thought by owners of subaqueous lands that a trespass had been committed, or their rights invaded.

The narrow construction of what were and what were not navigable waters, and limiting the term "navigable waters" to those only where the tide ebbs and flows, never found lodgment here. The leading case of *Moore* v. *Sanborne,* 2 Mich. 519 (59 Am. Dec.

209), early laid down the rule in this State which has not been deviated from. It was there said:

"But in this country the public right cannot depend upon custom, or upon general use, and we accordingly find that in nearly all the States this rule has been extended so as to be adapted to the necessities of our trade and commerce, and to embrace all streams upon which in their natural state there is *capacity for valuable floatage,* irrespective of the fact of actual public use, or the extent of such use. A stream which can only be made floatable by artificial means can in no sense be deemed a public highway, nor, on the other hand, can the fact that a floatable stream has not been used by the public, or has only been used by persons following a particular occupation, deprive such stream of its public character."

Measured by this standard, and it is the standard used by this court in numerous cases, I think that not only Winans lake, but its outlet, form part of the navigable waters of the State. *Sterling* v. *Jackson,* 69 Mich. 488 (37 N. W. 845, 13 Am. St. Rep. 405), and *Hall* v. *Alford,* 114 Mich. 165 (72 N. W. 137, 38 L. R. A. 205), are not in point. Both cases involve the right of fowling. *Giddings* v. *Rogalewski,* 192 Mich. 319 (158 N. W. 951), dealt with a small pond covering only 20 to 25 acres, with no inlet or outlet, entirely surrounded by lands of a single owner, and it was expressly stated:

"The right of the people to fish in navigable or meandered waters where fish are propagated, planted, or spread, and to which they have lawful access by land or water, even though such waters may superimpose the subaqueous lands of a private owner, is not decided nor involved here."

It is provided by section 7694, 2 Comp. Laws 1915:

"That in any of the navigable or meandered waters of this State where fish have been or hereafter may be propagated, planted or spread at the expense of the people of this State or the United States, the people

shall have the right to catch fish with hook and line during such seasons and in such waters as are not otherwise prohibited by the laws of this State."

The testimony shows that Winans lake has been planted with fish from the State fish hatchery at Northville. If this lake is navigable water, and I believe it is, and it has been planted with fish at public expense, as the proof shows it has, then I think the public has the right to go upon its surface and exercise the right of fishing, provided no fast land under private ownership and control is crossed to exercise that right. It was said by this court in *Lincoln* v. *Davis*, 53 Mich. 375 (19 N. W. 103, 51 Am. Rep. 116):

"Such fishing as is done with lines from boats, even in narrow streams, cannot be complained of by riparian owners. The fish are like any other animals *feræ naturæ*, and in this region have always been regarded as open to capture by those who have a right to be where they are captured."

The bill alleges and the map shows a public highway on the shores of this lake. One can step into a boat from this highway and touch no part of the fast land under the control of plaintiff. I do not understand that there has been any trespass upon or threatened trespass to the fast land under the control of plaintiff. I think the bill should be dismissed.

KUHN, C. J., concurred with FELLOWS, J.