PLEASANT LAKE HILLS CORPORATION v. EPPINGER.

1. INJUNCTION—QUIETING TITLE—ASSIGNEE OF VENDEE'S INTEREST ENTITLED TO MAINTAIN SUIT.

The assignee of a vendee's interest in subaqueous land, for which a valuable consideration was paid, and who at the time of the hearing in the court below had paid for the land in full, was entitled to maintain a suit to enjoin trespass and to quiet title.[1]

2. SAME—EQUITY—OWNER OF SUBAQUEOUS LAND MAY MAINTAIN SUIT ALTHOUGH NOT IN ACTUAL PHYSICAL POSSESSION.

Although the holder of the record title to subaqueous land in a private lake cannot be said to be in actual, physical possession thereof, it is not thereby precluded from maintaining a suit in equity, but under 3 Comp. Laws 1915, § 12302, may maintain suit to enjoin trespass and quiet title.[2]

3. EQUITY—COURT HAVING JURISDICTION WILL RETAIN IT TO SETTLE RIGHTS OF PARTIES OWNING SUBAQUEOUS LAND.

Where defendants owning land fronting on a private lake to high-water mark, claimed a strip of land below high-water mark by adverse possession, but its value is inconsequential, and the real question involved is their right

---

[1]Injunction, 32 C. J. § 173; Quieting Title, 32 Cyc. p. 1338;
[2]Injunction, 32 C. J. § 173; Quieting Title, 32 Cyc. 1338.

to go over plaintiff's subaqueous land in boats and to fish there, the court, having acquired jurisdiction to determine the rights of plaintiff as owner of the fee of the lake bottom lands, should retain it to settle the rights of the parties.[3]

4. WATERS AND WATERCOURSES—RIPARIAN RIGHTS.

Riparian rights may be conveyed separate from the fee.[4]

5. ADVERSE POSSESSION—POSSESSION INSUFFICIENT TO ESTABLISH TITLE TO STRIP OF LAND IN PRIVATE LAKE.

Possession by defendants of a strip of land below high-water mark in a private lake, *held*, not such actual, continual, visible, notorious, distinct, and hostile possession as would ripen into title by adverse possession.[5]

6. COURTS—STARE DECISIS—DETERMINATION OF COURT IN PREVIOUS CASE INVOLVING SAME PROPERTY ACCEPTED AS FINAL.

Where the Supreme Court in a previous case determined that the lake involved in this case was a private pond and its bottom privately owned, which the plaintiffs in this case have purchased and in reliance thereon have invested a large sum of money, the doctrine of *stare decisis* demands that the determination in that case be accepted by the court as final.[6]

Appeal from Livingston; Collins (Joseph H.), J. Submitted April 28, 1926.  (Docket No. 12.)  Decided June 7, 1926.

Bill by the Pleasant Lake Hills Corporation against Louis Eppinger and others to enjoin a trespass and to quiet title.  From a decree for plaintiff. defendants appeal.  Affirmed.

*Louis E. Howlett* and *Francis J. Shields,* for plaintiff.

*Thomas, Shields & Silsbee* (*John C. Shields,* of counsel), for defendants.

FELLOWS, J.  In *Winans* v. *Willetts,* 197 Mich. 512, we had before us on appeal from the circuit court

[3]Equity, 21 C. J. § 117; [4]Navigable Waters, 29 Cyc. p. 373; Waters, 40 Cyc. pp. 740, 742; [5]Adverse Possession, 2 C. J. §§ 43 (Anno), 621; [6]Courts, 15 C. J. § 342.

for the county of Livingston, in chancery, the question of the rights of Winans, owner of subaqueous lands covered by the waters of Winans lake, sometimes known as Pleasant lake, as well as the character of the lake itself, and there determined what such rights were and fixed the character of the lake.    Relying upon the holding in that case plaintiff here has acquired from Winans and others the title to all the subaqueous lands to high-water mark and several hundred acres adjacent to the lake, having holdings of approximately 900 acres, has expended around $170,000 already and made plans for future improvements involving additional expenditures, for the purpose of establishing a summer colony similar to a club, where the owners can have seclusion and exclusive fishing, boating and bathing privileges in the lake. The parties interested were unable to obtain all the land fronting on the lake; defendants own some of it, and insisted upon their right to go upon the lake over the subaqueous lands owned by plaintiff for fishing, boating, bathing and other suitable purposes.    To restrain defendants from repeated trespass and to quiet plaintiff's title to the subaqueous lands and a narrow strip between high- and low-water mark, this bill was filed.    From a decree granting plaintiff relief, defendants appeal.

Defendants question the right of plaintiff to be heard in a court of equity, and such objection will be first considered.    It is urged that the status of plaintiff as assignee of one Burton, who had a contract with the Winanses, was such as to preclude its filing the bill.    In the contract Burton agreed to pay $80,000 for the Winans interest, and while there are numerous provisions in the contract, we must hold that Burton had at least a vendee's interest, which he assigned to plaintiff.    Before the case was tried plaintiff had paid for all the property and the bill was amended to show

this fact.  Possibly the filing of a supplemental bill would have been better practice, but this point was not and is not now made in the case.  The case was tried on the bill as amended.  We think plaintiff's interest both when the bill was filed and when the case was tried was sufficient to entitle it to be heard.  The objection is without merit.

It is also insisted that plaintiff is out of possession and defendants are in possession, and hence, under numerous cases in this court, including *Beach* v. *Rice,* 186 Mich. 95, plaintiff's remedy is by ejectment.  But we do not think defendants' contention as to the facts can be sustained.  The land here involved is subaqueous land.  Neither party is, or claims to be, in the actual, physical possession of this lake bottom. Plaintiff holds the record title to all of it, although it can not be said that it has actual physical possession of the soil; neither have the defendants.  Section 12302, 3 Comp. Laws 1915, so far as important here, provides:

"Said circuit court in chancery shall also have jurisdiction and authority:  *  *  *
"4. To hear and determine suits instituted by any person claiming the legal or equitable title to lands, whether in possession or not, against any other person not in possession, setting up a claim thereto in opposition to the title claimed by the plaintiff: And, if the plaintiff shall establish his title to such lands, the defendant shall be decreed to release to the plaintiff all claims thereto."

The facts in the instant case justify the filing of this bill under this statute.  The main question in the case is whether defendants have the right, which they assert, to go over the subaqueous land in boats, to fish there, and in fact to exercise such privileges as are usually enjoyed in the public waters of the State. If they have such right they commit no trespass in so exercising it; if not, they are guilty of continual

and repeated trespasses which a court of equity should restrain. The strip of land below high-water mark which defendants claim to have acquired title to by adverse possession is so narrow and inconsequential as to be but an incident to the main question, and the court having acquired jurisdiction to determine the rights of the plaintiff as owner of the fee of the lake bottom lands should retain jurisdiction to settle the rights of the parties. The actual land is of little or no value unless it carries with it the rights which defendants assert. In *Beach* v. *Rice, supra,* the real controversy was over 25 acres, a portion of which was apparently fast land marsh in the possession of defendant, as the opinion states that marsh hay was cut from it, and the parties were sent to the law side to settle such controversy. In *Winans* v. *Willetts, supra,* we determined the rights of the parties in a suit in equity and we will do so in this case.

April 30, 1888, one Bennett and wife, predecessors in title of defendants, conveyed to George E. Winans and Howard Hovey, predecessors in title of plaintiff, the overflowed land to high-water mark in the southwest quarter of the northwest quarter of section 14, reserving only

\* \* \* "the right to use the waters of the above named Pleasant Lake for the purpose of watering farm stock, cutting ice and drawing water for household use."

The testimony and the map indicate there was but a very narrow strip between the high-water mark and the section line. Subsequent conveyances by Bennett and his successors did not except this subaqueous land. Defendants insist that by adverse possession of themselves and their predecessors they have acquired title to it, and at least to that portion between high- and low-water mark so that they have all the rights of riparian owners. That one may con-

vey riparian rights separate from the fee is settled by the recent case of *St. Helen Shooting Club* v. *Mogle*, 234 Mich. 60. By the decree defendants were given the rights reserved by Bennett in his deed of April 30, 1888. Without quoting the testimony, it will suffice to say that the possession by defendants and their predecessors in title of the strip between high-water mark and the section line, or between high-water and low-water marks was not such an actual, continual, visible, notorious, distinct, and hostile possession as would ripen into title by adverse possession.

As before noted, the case of *Winans* v. *Willetts*, *supra*, brought to this court the question of the character of this very lake and the right of others than the owner of the lake bottom to go upon it. As to the first question, this court held:

"It is plain, however, that the lake is not a public, navigable body of water, and is a privately owned pond."

As to the second question, this court held:

"They can no more enter without permission the portions of the premises covered by water than they can invade the uplands of the riparian owners."

The writer of this opinion did not then agree with the opinion of the court in that case and wrote in dissent. But it is unimportant what his views then were or now are. We think it is likewise unimportant what views any or all the members of the court as now constituted entertain. Every reason for the application of the doctrine of *stare decisis* demands that this court accept the holding of the court in that case as final. The property involved is the same, the rights asserted are the same, in reliance upon the decision in that case, plaintiff has invested $170,000. Every element of fair dealing with litigants requires us to recognize the doctrine of *stare decisis*, and as applied to the same property follow the decision in that

case. If it is to be ever overruled, it should be in a case involving other property than that specifically passed upon there.

The decree will be affirmed, with costs.

BIRD, C. J., and SHARPE, SNOW, STEERE, WIEST, CLARK, and McDONALD, JJ., concurred.