## TAYLOR FISHING CLUB v. HAMMETT.
### No. 1570.

Court of Civil Appeals of Texas. Waco.

Nov. 7, 1935.

Rehearing Denied Dec. 5, 1935.

B. R. Reeves, of Palestine, for appellant.

Bradley & Bradley, of Groesbeck, for appellee.

ALEXANDER, Justice.

Taylor Fishing Club has in its possession and under fence all of Stanmire Lake in Leon county except a small portion on the north end thereof which is owned by John Hammett. The latter insists that he and his invitees have a right to enter the lake by boat on Hammett's premises, cross through the partition fence, and take fish from that portion of the lake within the fishing club's inclosure. Taylor Fishing Club brought this suit to enjoin Hammett from so entering its premises and taking fish therefrom. The case was submitted to the trial court on an agreed statement of facts. That court entered judgment for the defendant, and the plaintiff appealed.

The material facts are these: Stanmire Lake is a fresh-water inland lake in Leon county about 1½ miles long, 700 feet wide, averaging 15 feet deep from one end to the other at points 10 feet or more from its banks, and lies between the Trinity river on the east and Keechi creek on the west. Trinity river, which lies less than one-half mile east of the lake, is navigable within the provisions of Revised Statutes, art. 5302, from points north of or above the lake to the Gulf of Mexico. Keechi creek, which lies about 2 miles west of the lake, flows into Trinity river below the south end of the lake. While said creek carries a large body of water, particularly during overflow periods, it does not appear to be navigable in fact nor within the provisions of the above statute. The land surrounding the lake between the creek and the river is low, and during an overflow of either Trinity river or Keechi creek the lake is filled to overflowing and the waters of the river, Keechi creek, and the lake all come together, and large quantities of fish habitually pass from the river to the lake. The lake is supplied with water from springs, rainfall, and overflows from Trinity river and Keechi creek. The water from Stanmire Lake drains through sloughs and small lakes for a distance of approximately 2 miles into Keechi creek and then for one-half mile into Trinity river. The agreed statement of facts stipulates, in part, as follows: "There is no connection between Stanmire Lake, the lower lakes mentioned above and Keechi creek with the river in

dry times nor in normal times, but there is connection by water with Stanmire Lake, Keechi creek, and the Trinity river at times other than overflow." There is nothing to indicate that the sloughs connecting the lake with Keechi creek ever carry enough water to float a boat except during flood times. These events apparently occur at uncertain periods and are of short and irregular duration. The land in the immediate vicinity of the lake is wooded and very thinly settled. There has not been any docks, wharfs, or other commercial improvements on the lake, and the lake has never been used for navigation nor for any other commercial purpose, but it has been used for many years for fishing, camping, and as a general pleasure resort, and for boating with small motorboats. Said lake is situated entirely on three certain surveys patented by the state of Texas in 1848. The field notes of each of these surveys call for north and south lines that begin on the west bank of the river and run west to the east margin of the lake, and thence a given number of varas across the lake to the west margin thereof, and thence to points in the west line of the survey, thus including the bed of the lake within the field notes of the surveys. The size of the lake, its boundary, and its depth are substantially the same now as they were when the patents were issued. If the patents issued by the state were effective to pass title to the land under the lake, the Taylor Fishing Club, appellant herein, owns all of the land upon which the lake is situated, including the land abutting on the lake, with the exception of a segment of the lake on the north end thereof, which segment of the lake, including the land abutting thereon, is owned by appellee. Appellant's land is completely inclosed with a fence, with the exception of the Trinity river side, and has a fence through the lake on or near the line between appellant's and appellee's land. Said lake at the base or common line between appellant's and appellee's land is about 150 feet wide and has an average depth of from 6 to 8 feet.

The first material question to be determined is whether or not the lake in question is navigable. We think the provisions of Revised Statutes, art. 5302, in which it is provided in substance that all streams that retain an average width of 30 feet from the mouth up shall be considered navigable as a matter of law, apply to streams only and not to lakes. We must therefore determine whether or not this lake

is navigable independent of the statute. The rule is that "streams or lakes which are navigable in fact must be regarded as navigable in law; that they are navigable in fact when they are used, or are susceptible of being used, in their natural and ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water; and further that navigability does not depend on the particular mode in which such use is or may be had—whether by steamboats, sailing vessels or flat boats—nor on an absence of occasional difficulties in navigation, but on the fact, if it be a fact, that the stream in its natural and ordinary condition affords a channel for useful commerce." United States v. Holt State Bank, 270 U.S. 49, 46 S.Ct. 197, 199, 70 L.Ed. 465, and cases there cited; 45 C.J. 406. Every inland lake or pond that has the capacity to float a boat is not necessarily navigable. It must be of such size and so situated as to be generally and commonly useful as a highway for transportation of goods or passengers between the points connected thereby. It must either alone or in connection with other bodies of water connect points between which it is practical to transport commerce by water. 45 C.J. 414; Proctor v. Sim, 134 Wash. 606, 236 P. 114; Hodges v. Williams, 95 N.C. 331, 59 Am.Rep. 242; Chisolm v. Caines (C.C.) 67 F. 285, 293; Griffith v. Holman, 23 Wash. 347, 63 P. 239, 54 L.R.A. 178, 83 Am.St.Rep. 821; Giddings v. Rogalewski, 192 Mich. 319, 158 N.W. 951; Economy Light & Power Co. v. United States (C.C.A.) 256 F. 792; Lembeck v. Nye, 47 Ohio St. 336, 24 N.E. 686, 8 L.R.A. 578, 21 Am.St.Rep. 828. In Proctor v. Sim, supra, the court held that an inland lake 1,300 feet long, 1,000 feet wide, 40 feet deep, but not connected with any navigable waters, was not navigable. In Hodges v. Williams, supra, the court held that a lake 15 miles long, 8 miles wide, and 3½ feet deep, and forming no link in a chain of water communication, was not navigable. In that case the court said: "In New York it has been held, that an inland lake, five miles long and three-quarters of a mile wide, which has no important inlet, and does not form part of a chain of connecting water, is subject to the common rule as to fresh-water streams. Ledyard v. Ten Eyck, 36 Barb. [N.Y.] 102. And in New Jersey it has been held, that a fresh-water lake three miles long and one mile wide, and of a sufficient depth to

float large vessels, but which had no navigable outlet, and had never been navigated by vessels larger than a fishing craft thirty feet long, was private property. Cobb v. Davenport, 32 N.J.Law, 369."

▮▮▮▮ While Stanmire Lake is large enough to float a boat, it is not wide enough or long enough to provide a practical route for the transportation of commodities in any direction and does not connect any points between which it would be useful as a practical route for navigation. It is at times connected by water with Keechi creek and Trinity river, but we do not understand that this connection is sufficient for navigation. The only time that this connection is sufficient for floatage is during flood periods, and these occur at uncertain and irregular intervals. "If the stream is not always navigable, it must be capable of floatage, as the result of natural causes, at periods ordinarily recurring from year to year, and continuing for a sufficient length of time in each year to make it useful as a highway. The mere possibility of occasional use during brief or extraordinary freshets does not give it a public character." Gould, Waters, § 109; Griffith v. Holman, 23 Wash. 347, 63 P. 239, 54 L.R.A. 178, 83 Am.St.Rep. 821; Orange Lumber Co. v. Thompson, 59 Tex.Civ.App. 562, 126 S.W. 604, 606; Winans v. Willetts, 197 Mich. 512, 163 N.W. 993. The agreed statement of facts shows that the lake is useful for fishing and as a general pleasure resort, but it is generally held that a lake that is chiefly valuable for fishing or pleasure boats of small size is not navigable. 45 C.J. 411, note 41; Proctor v. Sim, 134 Wash. 606, 236 P. 114; Winans v. Willetts, 197 Mich. 512, 163 N.W. 993. Under the facts of this case we are of the opinion that the lake in question is not a navigable lake.

▮▮▮▮ Since this lake is nonnavigable, its bed is susceptible of private ownership. 67 C.J. 852, § 280; Manry v. Robison, 122 Tex. 213, 56 S.W.(2d) 438, par. 30. The field notes contained in the patents issued by the state cross the lake and show an unmistakable intention to convey the bed thereof. Under these patents and subsequent conveyances, appellant is the owner of all of that part of the bed of the lake within its enclosure. In fact, it is so agreed in the stipulation filed herein.

It may be conceded as a general proposition, as contended by appellee, that under the common law a riparian landowner whose land abuts on a nonnavigable lake and whose field notes call for the lake as a boundary line impliedly owns the land under the water to the center of the lake and that all riparian owners whose lands abut on such a lake have a right to the joint use of the entire lake for fishing and boating. 26 C.J. 599; Hardin v. Jordan, 140 U.S. 371, 11 S.Ct. 808, 838, 35 L.Ed. 428; Welder v. State (Tex.Civ.App.) 196 S.W. 868, and authorities there cited. But regardless of what may be the rights of the abutting owners under such circumstances, we are of the opinion that such rule has no application to the facts here under consideration. Here the appellee, by specific grant from the state, owned the land under a definite and specific portion of the lake, and we think it a sound proposition that an abutting landowner whose field notes cross a nonnavigable lake and who, by virtue thereof, holds title to a specific portion of the bed of the lake, has a right to control that part of the surface of the lake above his land, including the right to fish in or boat upon the water, and that any use or interference therewith by another constitutes an infringement on his rights as such owner. This is particularly true where, as in this case, the land lines are capable of being marked. 27 R.C.L. 1189; 11 R.C.L. 1032; Smoulter v. Boyd, 209 Pa. 146, 58 A. 144, 66 L.R.A. 829, 103 Am.St.Rep. 1000; Lembeck v. Nye, 47 Ohio St. 336, 24 N.E. 686, 8 L.R.A. 578, 21 Am.St.Rep. 828; Tripp v. Richter, 158 App.Div. 136, 142 N.Y.S. 563; Kean v. Roby, 145 Ind. 221, 42 N.E. 1011; Mason v. Calumet Canal & Improvement Co., 150 Ind. 699, 50 N.E. 85; see, also, note, 23 A.L.R. 788; Fisher v. Barber (Tex. Civ.App.) 21 S.W.(2d) 569; State v. West Tennessee Land Co., 127 Tenn. 575, 158 S.W. 746, par. 11, Ann.Cas. 1914B, 1043.

We recognize as sound the proposition asserted by appellee that all fish in lakes (public or private) subject to overflow from rivers or other streams within the borders of this state are property of the people of this state and that the state has a right to regulate the taking thereof. Revised Statutes, art. 4026; 11 R.C.L. 1044; 26 C.J. 623. The above rule, however, is merely for the purpose of protecting the fish in order to prevent a depletion of the supply thereof. It was never intended that thereby a stranger should have a right to enter upon the private property of another for the purpose of catching fish, although the fish until caught belong to the public. Penal Code, art. 1377; 19 Tex.Jur. 690; 11

R.C.L. 1044; Smith v. Godart (Tex.Civ. App.) 295 S.W. 211; Heath v. Diversion Lake Club (Tex.Civ.App.) 33 S.W.(2d) 479. Our holding in this respect is not a variance with that of the Commission of Appeals in Diversion Lake Club v. Heath, 86 S.W. (2d) 441, 443, for in that case the court distinctly recognized that the right to fish in a stream depended on the ownership of the bed thereof. In this connection, the court said: "The general rule is well established by the authorities that the right to fish in a stream, whether belonging to the public in common or exclusively to the owners of the land bordering the stream, is determined by the ownership of the bed."

It is our opinion that the lake in question is nonnavigable; that appellant has title to all of the land, including the bed of the lake, within its inclosure; and that appellant has the exclusive right of fishing in and boating upon the water in that part of the lake within its inclosure. Under these circumstances, we think the trial court erred in refusing to grant the injunction as prayed.

The judgment of the trial court is reversed, and the cause remanded, with instructions to enter judgment for plaintiff as prayed.