## NE–BO–SHONE ASS'N, Inc., v. HOGARTH et al.

### No. 7032.

Circuit Court of Appeals, Sixth Circuit.

Jan. 14, 1936.

Stuart Knappen, of Grand Rapids, Mich., and W. C. Moore, of Toledo, Ohio (Frank S. Lewis, of Toledo, Ohio, Knappen, Uhl, Bryant & Snow, of Grand Rapids, Mich., and Doyle & Lewis, of Toledo, Ohio, on the brief), for appellant.

Willis B. Perkins, Jr., of Grand Rapids, Mich., and E. A. Bilitzke, of Lansing, Mich., (Willis B. Perkins, Jr., and Dorr Kuizema, both of Grand Rapids, Mich., and Harry S. Toy, of Detroit, Mich., on the brief), for appellees.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The appeal challenges the existence of public fishing rights in a Michigan stream running through private property; the stream having at one time been used for the floating of logs, but not now so used and not otherwise navigable. The appellant is a private fishing club organized as a nonprofit corporation under the laws of Ohio. Some of the defendants are private citizens of Michigan who desire to fish in the stream, and others are state officers, including the director of conservation, members of the conservation commission, and the Attorney General of the state and his assistants. The suit was by bill in equity, which sought a declaration of the plaintiff's rights and an injunction against interference therewith, and the appeal is from a decree dismissing the bill.

The stream here involved is known as Pine river. It winds its tortuous way for approximately one hundred miles through four Michigan counties to the Manistee river. For about seven miles it passes through plaintiff's land on both its banks. These lands were acquired on August 24, 1925, by the Ne-Bo-Shone Association, then a voluntary association, but of which the present corporation is the successor, with identical membership. The average depth of the river on plaintiff's property is normally about two and a half feet, while its average width is about fifty feet. The river has never been navigable for boats, but beginning about the year 1880 it was used extensively for floating logs to mills along its course. This continued for a period of from thirty to forty years, until the timber became exhausted. Its principal later use was and still is as a trout stream. It is obstructed at many places by log jams, stubs, and snags, and, for the purpose of providing additional fish cover, the plaintiff has added materially to such obstructions in that portion of the river which flows through its property.

The Supreme Court of Michigan, in the case of Collins v. Gerhardt, 237 Mich. 38, 211 N.W. 115, involving a stretch of the river through lands adjacent to those of the plaintiff, decided on December 8, 1926, in an action of trespass, to which the present litigants were not parties, that Pine river was a navigable stream, and that the public had a right to fish therein. Attempts were thereafter made by fishermen to forcibly remove log jams and other obstructions in the river on the plaintiff's property, but were prevented by guards. Both sides then submitted grievances to the Michigan conservation department, with the result that a notice was served upon the plaintiff that obstacles in the river must be removed, and a notice was given to the public that it had a right to remove the obstructions and to the protection of the state in so doing. The action below followed.

It is not now disputed that the case of Collins v. Gerhardt, supra, declares the law

of Michigan with respect to the navigable and public character of Pine river. It is, however, asserted that the plaintiff's right to its exclusive use for fishing as it passes through its property became vested prior to the Michigan decision, that the law of Michigan with respect to streams of this character had been settled by repeated decisions of the Michigan Supreme Court so as to become a rule of property, and therefore, under the doctrine of Kuhn v. Fairmont Coal Co., 215 U.S. 349, 30 S.Ct. 140, 143, 54 L.Ed. 228, is to be now applied notwithstanding the later decision of the Michigan court.

The question to be decided necessitates a careful review of Michigan decisions respecting the rights of the public in navigable streams, and whether navigability is determined by the capacity of a stream for the floating of logs, though its use for that purpose has been abandoned. In Michigan, title to the thread of a stream is in the adjoining landowner. Lorman v. Benson, 8 Mich. 18, 77 Am.Dec. 435. It follows that where, as here, one owns the land on both sides of the stream, he has title to the bed of the stream. This is not disputed. The issue is as to whether such title is burdened with a public servitude in respect to fishing. It is urgently insisted that, notwithstanding some of the earlier decisions of the Michigan Supreme Court, notably Moore v. Sanborne, 2 Mich. 519, 520, 59 Am.Dec. 209, the law had been settled by a continued series of Michigan decisions to the end that, where a stream is not navigable in the usual sense so as to be used for transportation of goods and passengers by vessels, the owners of the bed have the exclusive right to fish therein, that, even though a public easement exists for the purpose of floating logs, such easement includes no rights other than those necessary and incidental to such log movement, and that, when waters become unfitted for public use and cease to be so used, the easement ceases to exist, as in the case of an abandoned highway on land. It is just as insistently urged, on the other hand, that not only is there no such rule of property in streams of this character as that for which the plaintiff contends, but that the rule is clearly settled by Michigan decisions that the capacity of a stream for floating of logs determines its navigability, and that the right of the public to fish therein follows. The District Judge took the view that floatability is not a test of navigability, but that both

are equally criteria of public waters, and, if waters are public for any purpose, they are public for all purposes.

The solution of the problem is not unattended with difficulty, and we are not aided by an analysis of Michigan cases either in Collins v. Gerhardt or in the decision below. In Moore v. Sanborne, supra, the principal question for decision was whether a certain Pine river (not the one here involved) was a public highway. As the river in question was a small stream and of but limited capacity for floatage, the court held the question to be fairly and distinctly presented as to what streams are to be regarded as public highways of the state so as to be under the servitude of the public interest. "The true test, therefore, to be applied in such cases," said the court, "is, whether a stream is inherently and in its nature, capable of being used for the purposes of commerce for the floating of vessels, boats, rafts, or logs." The decision of the Maine court in Brown v. Chadbourne, 31 Me. 9, 50 Am.Dec. 641, was considered directly apposite, and was adopted with entire approval. In that case it had been held that it was not necessary, in order to determine a stream a public highway, that it should have a capacity for floatage in its natural and ordinary stage at all seasons of the year, but that the distinguishing criterion "consists in its fitness to answer the wants of those, whose business requires its use."

In Middleton v. Flat River Booming Co., 27 Mich. 533, 534, Grand Rapids Booming Co. v. Jarvis, 30 Mich. 308, and Thunder Bay Booming Co. v. Speechly, 31 Mich. 336, 337, 18 Am.Rep. 184, the Michigan court held that riparian owners could complain against the driving of logs which interfered with and destroyed the usefulness of their mills and dams or which flooded their lands, and, though in these cases a floatable stream was still designated as a public highway, the right of floatage was referred to as an easement or a right in the nature of a public use not paramount to the rights of the owners of the bank. Reasoning by analogy, the appellant contends that, since fishing is not an incident to the right of floatage, public rights cannot extend beyond that use of a private stream which its use for floatage requires. There followed, however, the case of Burroughs v. Whitman, 59 Mich. 279, 26 N.W. 491. The action was trespass for fishing on plaintiff's millpond created by damming Thread river. The trial court had submitted the issue of navigability to

the jury, but this was held to be error on the ground that there was no evidence to establish any of the elements of navigability as laid down by Michigan courts, citing Moore v. Sanborne, supra. The dissenting opinion likewise approved the test of Moore v. Sanborne as a test of navigability. It may be said here that no other case has been cited where the precise question involved was the right of the public to fish in the smaller rivers of the state based on navigability as determined by their capacity for the floating of logs. Sterling v. Jackson, 69 Mich. 488, 37 N.W. 845, 13 Am.St.Rep. 405, held that the right to navigate as against the holder of title to the bed of the waters did not include the privilege of hunting from a boat, and that such hunting was a trespass. In so far as the right to hunt is asserted to be analogous to the right to fish and so to establish this case as a precedent, the analogy is destroyed by the opinion in the case, which points to the historical distinctions between fishing and hunting rights in England, where the two activities had always been treated as separate subjects of legislation and regulation.

The next case in the series relied upon by the appellant is Koopman v. Blodgett, 70 Mich. 610, 38 N.W. 649, 651, 14 Am.St.Rep. 527. This is again a case involving the rights of a millowner as against log drivers, and would aid little in the solution of the problem except for the statement of the court that "in holding that a public right of floatage exists in streams capable of furnishing valuable facilities for moving logs cut in the vicinity it has never been the understanding that the public had any other rights than were furnished by the natural water-way. * * * No easement beyond the natural one can be obtained without authority." Whether this reasoning was necessary to decision we do not feel obliged to say, but, in any event, it is not quite clear as to what limitations, if any, are put upon public rights in a natural waterway. Certainly the use of a waterway in such manner as to damage the property of a riparian owner, including a mill appurtenant to his uplands, would seem to bear little relation to a public use of the stream which does not so damage his land. City of Grand Rapids v. Powers, 89 Mich. 94, 50 N.W. 661, 14 L. R.A. 498, 28 Am.St.Rep. 276, is another of the series. There the court held that the right of the city to use the river for floatage purposes furnished no basis for enjoining the erection by the riparian owner of a wall in the river bed. The court pointed out the manifest difference between public streams that can be used successfully for the running of boats for the purpose of commerce and those which are only capable of being used for the floatage of lumber and logs, and held the riparian owners entitled to the beneficial and sole use of the latter streams except for floatage. In this case appears the first statement of a doctrine that, when streams have become unfitted for valuable public use and have actually ceased to be used for public highways, there is no more reason for holding them to be public than in the case of a land highway which has been abandoned and is useless. The principle, however, is not here applicable, for, while the record discloses that Pine river is not now used as a public highway, it is not clear that it is incapable of such use, or that it may not again be so used, and the test of capacity for use as laid down in Moore v. Sanborne is not thereby overruled.

We come finally to the inland lakes cases cited by the appellee. Giddings v. Rogalewski, 192 Mich. 319, 158 N.W. 951, 953; Winans v. Willetts, 197 Mich. 512, 163 N.W. 993; Pleasant Lake Hills Corporation v. Eppinger, 235 Mich. 174, 209 N. W. 152. Though these cases deal with private lakes and not with rivers, they expressly or inferentially reaffirm the test of navigability applied in Moore v. Sanborne. If it be said that they discard that test in view of the fact that the lakes may have sufficient water capacity for the floating of logs or even of small boats, it is to be noted that the test was not so limited. The original doctrine applied the criterion of floatability to rivers as a test of their navigability only where they might be used as highways of commerce. An inland lake wholly surrounded by private property, and having no navigable outlet to other waters of the state, cannot be said to constitute a highway of commerce except in the most limited and restricted sense. This was clearly pointed out by the court in Giddings v. Rogalewski, where it was said, "The true test is whether the waters under consideration are capable of being used by the public as thoroughfares or highways for purposes of commerce, trade, and travel—of affording a common passage for transportation and travel by the usual and ordinary modes of navigation," citing Moore v. Sanborne, supra.

We have not made our analysis of Michigan decisions exhaustive, but have

confined ourselves to those principally relied upon. It is chiefly from these that we are asked to deduce a rule of property applicable in Michigan when the appellant's rights accrued and so to ignore the clear holding of the decision in Collins v. Gerhardt. The doctrine of Kuhn v. Fairmont Coal Co., supra, by which we are urged to be governed, is to the effect that "where, before the rights of the parties accrued, certain rules relating to real estates have been so established by state decisions as to become rules of property and action in the state, those rules are accepted by the Federal court as authoritative declarations of the law of the state. * * * But where the law of the state has not been thus settled, it is not only the right, but the duty, of the Federal court to exercise its own judgment * * * but even in such cases, for the sake of comity and to avoid confusion, the Federal court should always lean to an agreement with the state court if the question is balanced with doubt." It would, we think, be difficult to say upon a literal application of this doctrine that the existence of a rule of property such as is contended for by the appellant was free from doubt, even were we to give no consideration to the evolution and broadening of the rule by the Supreme Court of the United States in Hawks v. Hamill, 288 U.S. 52, 53 S.Ct. 240, 77 L.Ed. 610; Chicago, Mil. St. Paul & P. R. Co. v. Risty, 276 U.S. 567, 48 S.Ct. 396, 72 L.Ed. 703, and Sioux County v. National Surety Co., 276 U.S. 238, 48 S. Ct. 239, 72 L.Ed. 547, for we think it is not clear that the law of Michigan established by the plain and unequivocal decisions of its highest court is that the owner of the bed of a stream capable of being used as a highway of commerce has the sole and exclusive right to take fish therefrom. No state decision is declaratory of this right. The best that can be done by the appellant is to apply general statements of principle to factual issues not ruled upon and to reason by analogy. In endeavoring to ascertain the existence of a local rule of property, analogies have been thought to be of doubtful reliance, Graham v. Englemann (D.C. Texas) 263 F. 166, 168; In re Gary (D.C. Texas) 281 F. 218, 222, for they but permit a forecast of what local courts may in a given case decide rather than a determination of what the local law is. Whether so or not, we have adhered to the rule, Philadelphia National Bank v. Raff (C.C.A.) 76 F.(2d) 843, 844, that cases involving local law are "authoritative to the extent of the

precise question decided, and no farther." The authorities are there fully cited.

Finally it may be said that, while not controlling, it is not without importance that the Supreme Court of Michigan in Collins v. Gerhardt did not consider it was announcing a new rule of property, but considered that it was adhering to the long-established rule as first announced in Moore v. Sanborne, and it is also important to note that the decision in Collins v. Gerhardt has since been construed as declaring the settled law of Michigan. Putnam v. Kinney, 248 Mich. 410, 227 N.W. 741; Bushman v. Estleman, 256 Mich. 243, 239 N.W. 262. Our conclusions make it unnecessary to consider the effect of the public trust doctrine as applied in Michigan to public waters or the statutes of Michigan in respect to fishing waters stocked by the state. For the same reason we do not consider the defense of res judicata.

The decree below is affirmed.