*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CLIFFORD B. WALKER, Personal Representative
of the ESTATE OF EVELYN WALKER,

        Plaintiff-Appellee,

v

SILAS SALYER, also known as SILAS SALYERS,

        Defendant-Appellant.

UNPUBLISHED
April 09, 2025
2:13 PM

Nos. 367231; 367691
Ingham Circuit Court
LC No. 22-000463-CH

Before: MURRAY, P.J., and M. J. KELLY and N. P. HOOD, JJ.

PER CURIAM.

These two consolidated appeals[1] involve a judgment in favor of plaintiff, Clifford Walker, against defendant, Silas Salyer, regarding Salyer's trespass and removal of trees on a 79-acre parcel of land, and a resulting order for civil contempt sanctions against Salyer and his counsel, Elena Paremsky. In Docket No. 367231, Salyer appeals by right the order granting summary disposition in favor of Walker and awarding trebled statutory damages, and denying Salyer's motion for summary disposition. In Docket No. 367691, Salyer appeals by right the order granting Walker's motion to hold Salyer and Paremsky in contempt, and directing Paremsky to pay $2,500 in attorney fees to Walker's attorney as well as a fine of $3,500. We affirm.

## I. FACTUAL BACKGROUND

### A. THE 2020 QUIET-TITLE ACTION

---

[1] *Estate of Evelyn Walker v Salyer*, unpublished order of the Court of Appeals, entered October 27, 2023 (Docket Nos. 367231 and 367391).

These parties were previously before this Court in a 2020 quiet-title action, and a separate interlocutory application in the instant 2022 trespass matter. The following background facts are taken from the opinion resolving the claim of appeal:

> Silas Salyer and his now-deceased wife lived on an 80-acre property in Ingham County, and more than 25 years ago they severed a one-acre parcel from the rest of the property. They continued living on the large parcel and built a residential duplex on the small parcel. Over the years, Evelyn Walker—Salyer's sister—provided Salyer with substantial financial support to assist with medical expenses along with other bills. On June 25, 2015, Salyer and Evelyn met with attorney William H. Noud, Jr., to execute a quitclaim deed transferring ownership of a portion of Salyer's property to Evelyn. According to Salyer, his intent was that Evelyn would take ownership of the small parcel as compensation for financial support with the understanding that, at some undefined point in the future, she would pass it to Salyer's then-incarcerated son. However, unbeknownst to them, the quitclaim deed provided the tax identification number for the small parcel but the legal description of the large parcel. [*Salyer v Walker*, unpublished per curiam opinion of the Court of Appeals, issued April 20, 2023 (Docket No. 361590), pp 1-2.]

After Evelyn died in 2019, Salyer alleged that the 2015 quitclaim deed had misidentified the property. Noud contacted Walker to request a reconveyance of the 79-acre parcel to Salyer, but Walker declined.

In 2020, Salyer filed a notice of lis pendens indicating that the 2015 deed was incorrect because of inadvertence and mutual mistake. Salyer brought suit against the Estate, seeking to quiet title to the 79-acre parcel and claiming that a reformation of the 2015 quitclaim deed was merited as a result of a scrivener's error. Walker counterclaimed, seeking to quiet title in the Estate's favor and requesting an award of attorney fees based on an allegation of slander of title.

During discovery, Salyer failed to respond to Walker's interrogatories and requests for admissions, including the following:

> Please admit that the Plaintiff, Silas Salyers, as a result of having numerous medical conditions, and owing Evelyn Walker a significant amount of money for loans and advances to pay various bills and medical expenses, and wanting to make himself eligible for government assistance, deeded the 79-acre farm to Evelyn Walker on June 22, 2015 via a Quit Claim Deed.

Walker moved for summary disposition, arguing that, under MCR 2.312(C)(1), his requests for admissions were deemed admitted given Salyer's failure to respond. The court granted summary disposition in favor of Walker, dismissed Salyer's claims with prejudice, and ordered Salyer's notice of lis pendens to be removed. Salyer appealed by right.

On May 31, 2022, the day he filed his claim of appeal in the prior case, Salyer executed two quitclaim deeds, quitclaiming both parcels to himself. Subsequently, Salyer's attorney

Paremsky filed an affidavit and a seven-paragraph statement dated July 20, 2022, providing in part: "[T]he 2015 defective deed . . . has been declared null and void by the Grantor, and has been replaced by the corrected May 31, 2022 Quitclaim for this property . . . based on the Grantor's true intent and by correcting all of prior errors and omissions of the 2015 defective deed . . . ." Salyer's sworn statement provides in part that "[t]he May 31, 2022 Quitclaim Deed properly corrected the errors and omissions contained in the erroneous 2015 quitclaim deed."

## B. THE INSTANT 2022 TRESPASS ACTION

While his claim of appeal in the prior case was pending, Salyer trespassed onto the 79-acre parcel and harvested 43 trees, for which he was paid $20,000 by a lumber company with which he had contracted. Walker filed the instant suit in 2022, seeking treble damages under statute, repair of the damage Salyer caused to the parcel, and an award of costs and attorney fees. Walker also filed an ex parte motion for injunctive relief.

The court issued a preliminary injunction that prohibited Salyer from: (1) spending the remaining cash proceeds from the cutting of the 43 trees; (2) entering the 79-acre parcel for any reason; and (3) cutting and removing more trees from the 79-acre parcel. The court permitted Walker to negotiate with the lumber company regarding the remaining logs; Walker reached a settlement with the company and he kept the $10,000 proceeds.

Salyer moved to dissolve the preliminary injunction, arguing that uncontradicted facts established that he, not the Estate, owned the 79-acre parcel. Salyer acknowledged his appeal of the quiet-title decision was pending at that time, but claimed it was not relevant because the subject of that appeal was the one-acre parcel, not the 79-acre parcel. Walker answered that Paremsky had filed documents that clouded the title and asked the court to sanction Paremsky, order her to remove the documents she filed, and award costs and fees.

In an August 30, 2022 order, the court directed that Paremsky should "immediately" remove the recorded 2022 quitclaim and sworn statement affidavit declaring them void in a record document filed with the register of deeds. The court denied Salyer's motion to dissolve the preliminary injunction for lack of merit, and prohibited Salyer from filing any additional motions regarding ownership of the 79-acre parcel. Finally, the court awarded Walker $500 in costs and fees, but denied Walker's request for sanctions, although the court stated it would reconsider sanctions if the order was violated.

Salyer unsuccessfully applied for leave to appeal the August 30, 2022 order. *Estate of Evelyn Walker v Silas Salyer*, unpublished order of the Court of Appeals, entered March 13, 2023 (Docket No. 363050). While that application was in process, Salyer moved for summary disposition, citing MCR 2.116(C)(7), (8), and (10), along with MCR 2.116(I)(1) and (2). He argued that Walker's complaint was based on the false claim that the Estate owned the 79-acre parcel, while the overwhelming evidence in the record proved he, not the Estate, owned the 79-acre parcel. On October 3, 2022, the court entered a stipulated order that stayed proceedings pending resolution of the appeal and summary disposition ruling.

In April 2023, while Salyer's motion for summary disposition remained pending, this Court decided the appeal of the 2020 quiet-title judgment, ruling in part that the admission that Salyer

intentionally conveyed the 79-acre parcel to Evelyn was conclusively established under MCR 2.312(D)(1). *Salyer*, unpub op at 3-4. The Court decided that the trial court reasonably inferred that Salyer's failure to respond was a lack of due diligence, and that Salyer had not shown good cause, given his repeated failures to comply with discovery. *Id*. at 4.

This Court also rejected Salyer's claim that the court erred regarding Walker's slander of title claim. After indicating that the element of malice is vital in a claim for slander of title, this Court held:

> To establish malice in this case we again look at the admissions and the inferences which flow from them. As is discussed above, for the purposes of this litigation it has been conclusively established that Salyer intentionally conveyed the 79-acre parcel to Evelyn Walker as compensation for her financial support. Given this fact, which was properly deemed admitted, Salyer could not have filed the lis pendens in good faith. From this admission, it would be unreasonable *not* to infer Salyer intentionally filed a false notice against the property. Therefore, the trial court properly granted summary disposition under MCR 2.116(C)(10) in favor of Walker for his claim of slander of title. [*Id*. at 6.]

In reliance on this Court's decision in the quiet-title appeal, Walker moved for summary disposition in his trespass action, citing MCR 2.116(C)(9), (10), and (I)(1)-(2). As to his trespass claim, Walker argued that, in light of this Court's decision, ownership of the 79-acre parcel had been established and that Salyer had admitted in his pleadings he had invaded the property with the intent to remove trees. Regarding the claim of conversion, Walker maintained that Salyer cut down numerous other trees for his personal use in addition to the 43 trees cut down under the lumber contract, and that he also removed mushrooms and other food items growing wild on the property. Walker sought damages of $20,000, trebled under MCL 600.2919, because Salyer intentionally trespassed onto the 79-acre parcel to cut down irreplaceable trees while knowing he lost the quiet-title case. Additionally, Walker argued that Paremsky should be held in contempt because she had not immediately removed the 2022 quitclaim deeds, as she was ordered to do by the circuit court in its August 30, 2022 order.

The court granted summary disposition in favor of the Estate under MCR 2.116(C)(9), (10), and (I)(1)-(2), awarding the Estate $60,000 in trebled damages, MCL 600.2919(1)(a) and (c). The order denied Salyer's competing motion for summary disposition, and issued contempt sanctions against Salyers and Paremsky for violating the court's August 30, 2022 order.

On July 28, 2023, Paremsky filed an affidavit with the register of deeds, citing MCL 565.451a, in which she identified both the one-acre and the 79-acre parcels. She stated in relevant part that she was removing the 2022 notice of lis pendens because the circuit court had ordered her to do so.

Shortly thereafter, the court reconsidered the sanction portion of the judgment, and determined that MCR 3.606, not MCL 600.1715, governed because the act of contempt was not committed in the court's presence. In an order on August 1, 2023, the court "set aside and held for naught" the judgment's $5,000 contempt sanction.

Paremsky filed another affidavit with the register of deeds, again identifying both parcels. In the accompanying sworn statement from Salyer, he indicated that the August 1, 2023 order set aside the portion of the July 2023 judgment requiring removal of the lis pendens. The sworn statement identified the August 30, 2022 order as "interim" and stated that it currently was pending on appeal.

Walker then filed a postjudgment ex parte motion to reopen the case, requesting the court to order Paremsky to show cause why she should not be punished for civil contempt. Salyer responded that the court was without authority to act because of the pending claim of appeal, that Paremsky timely complied with the August 2022 order, and that Walker's postjudgment claims were frivolous.

At the show cause hearing, Paremsky repeatedly contended that she had complied with the August 2022 order. The court stated that Paremsky had not followed the August 2022 order, that she refused to follow it in the court's presence, and that she committed additional contempt. The court indicated it would assess $3,500, including costs of $1,000 to Lozier (Walker's attorney), and a $2,500 fine, along with a daily fine of $250 if Paremsky and Salyer failed to execute the documents prepared by Lozier, and asked Lozier to prepare an order.

Upon receipt of Lozier's proposed order, Salyer moved for clarification regarding Paremsky's compliance with the August 30, 2022 order. Salyer argued that documents prepared by Lozier, including the removal of a Lady Bird deed, exceeded the court's rulings. Further, as the August 30, 2022 order was then on appeal, it could not be modified. Salyer argued that Walker and Lozier should be held in contempt.

The court ruled that the seven clouds on the title filed by Salyer and Paremsky from May 31, 2022 through August 15, 2023, should be removed. The court rejected as nonsensical Paremsky's argument that she should remove only two of the seven. In relevant part, the August 25, 2023 order stated the following:

> IT IS ORDERED that the Plaintiff, Estate of Evelyn Walker's Ex-Parte Motion with Affidavit is granted pursuant to MCR 3.606 for civil contempt sanctions and for intentional violation of the Court's August 30, 2022 Order, and the Court's Orders Dated May 9, 2022 and July 27, 2023 as amended on August 1, 2023.

The order further provided Paremsky should pay $2,500 within seven days for Lozier to prepare the necessary legal documents to void the 2022 and 2023 quitclaim deeds, notices of lis pendens, and affidavits, and to declare them null and void. Further, the order assessed a $3,500 contempt fine against Paremsky under MCL 600.1715. It indicated that a daily fine of $350 would be assessed for any day the legal documents prepared by Walker's counsel were not returned fully executed, and that a bench warrant for Paremsky's arrest could be issued for noncompliance. The court reserved the right to assess further remedies until the order was fully complied with.[2]

---

[2] On August 29, 2023, Paremsky filed a sworn statement regarding both parcels and declared seven instruments null and void.

## II. LEGAL ANALYSIS

### A. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a summary disposition motion, *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999), as it interprets questions of law, *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). For matters requiring discretionary review, a court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). For factual matters reviewed for clear error, such error exists "when this Court is left with the definite and firm conviction that a mistake has been made." *Skaates v Kayser*, 333 Mich App 61, 81-82; 959 NW2d 33 (2020) (quotation marks and citation omitted).

### B. SUMMARY DISPOSITION

Salyer argues that the court erred in granting summary disposition to Walker under MCR 2.116(C)(9) and (C)(10).

Under MCR 2.116(C)(9), summary disposition is proper when "[t]he opposing party has failed to state a valid defense to the claim asserted against him or her." Further, under MCR 2.116(C)(10), a court correctly grants summary disposition where, excepting damages, "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law."

Salyer takes issue with the court's conclusion that he committed trespass on the 79-acre parcel. " '[T]respass is an invasion of the plaintiff's interest in the exclusive possession of his land . . . .' " *Hadfield v Oakland Co Drain Comm'r*, 430 Mich 139, 151; 422 NW2d 205 (1988), overruled in part on other grounds by *Pohutski v City of Allen Park*, 465 Mich 675; 641 NW2d 219 (2002), quoting Prosser & Keeton, Torts (5th ed), § 87, p 622. To recover on a trespass claim, a plaintiff must show "an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession." *Wolfenbarger v Wright*, 336 Mich App 1, 15; 969 NW2d 518 (2021) (quotation marks and citation omitted). Additionally, the defendant must have intended the intrusion. *Adams v Cleveland-Cliffs Iron Co*, 237 Mich App 51, 66; 602 NW2d 215 (1999). Here, it is undisputed that Salyer intentionally intruded on the 79-acre parcel and that he did so without Walker's permission. Further, Salyer does not dispute that he intentionally entered the 79-acre parcel with the aim to have the lumber company cut and remove trees under their contract.

Salyer contends, however, that Walker did not have the right of exclusive possession because Walker failed to produce a deed transferring the 79-acre parcel from Salyer to the Estate. This Court's prior decision in *Salyer*, however, resolves this issue, where we observed that Salyer had admitted that he intended to transfer the 79-acre farm to Evelyn via the 2015 quitclaim deed. *Salyer*, unpub op at 3-5.

Salyer's argument that he did not trespass because he owned the parcel is merely an attempt to relitigate a matter that has been finally decided. As we explained in *Salyer*, "[o]nce a matter is admitted, it is 'conclusively established unless the court on motion permits withdrawal or

amendment of an admission.' " *Salyer*, unpub op at 3, quoting MCR 2.312(D)(1).  Salyer never moved to withdraw or to amend.  *Id*. at 4.  Salyer's admission that he deeded the 79-acre parcel to Evelyn negated the need for Walker to produce a transfer deed, and established that Walker had exclusive possession of the land.  Accordingly, Walker demonstrated the requisite elements of trespass and was entitled to summary disposition.

The trial court also properly awarded treble damages.  "Once such an intrusion is proved, the trespass is established, and the plaintiff is entitled to at least nominal damages," *Morse v Colitti*, 317 Mich App 526, 551; 896 NW2d 15 (2016), and may be entitled to further damages if proved, *Adams*, 237 Mich App at 72.  Under MCL 600.2919, a plaintiff may be entitled to treble damages where the defendant cuts down trees.  That statute provides in relevant part that treble damages are available in an action for trespass to:

(1) Any person who:

(a) cuts down or carries off any wood, underwood, trees, or timber or despoils or injures any trees on another's lands, or

(b) digs up or carries away stone, ore, gravel, clay, sand, turf, or mould or any root, fruit, or plant from another's lands, or

(c) cuts down or carries away any grass, hay, or any kind of grain from another's lands

without the permission of the owner of the lands, or on the lands or commons of any city, township, village, or other public corporation without license to do so, is liable to the owner of the land or the public corporation for 3 times the amount of actual damages.  If upon the trial of an action under this provision or any other action for trespass on lands it appears that the trespass was casual and involuntary, or that the defendant had probable cause to believe that the land on which the trespass was committed was his own, or that the wood, trees, or timber taken were taken for the purpose of making or repairing any public road or bridge judgment shall be given for the amount of single damages only.  [MCL 600.2919(1).]

Accordingly, single damages are awarded where the trespass was involuntary, or the defendant had probable cause to believe he owned the property.  Thus, a trespasser may avoid the imposition of treble damages where the trespasser has a "good faith and honest belief that he possessed the legal authority to commit the complained-of act . . . ." *Boylan v Fifty Eight LLC*, 289 Mich App 709, 725-726; 808 NW2d 277 (2010) (quotation marks and citation omitted).

Salyer did not demonstrate an issue of fact on whether he had a good faith and honest belief.  Instead, Salyer discounted the 2020 judgment and repeatedly asserted that he owns the 79-acre parcel because Walker did not produce a deed showing otherwise.  Salyer continues to try to attack the validity of the 2015 quitclaim deed, without conceding the existence of either his binding admission that he intended to deed the 79-acre parcel to Evelyn, or the judgment that resulted from

that admission. We cannot entertain his attempts to overturn our prior decision, so Salyer's argument that he honestly believed he owned the property must fail.[3]

Salyer also continues to argue that Walker's claim of ownership is frivolous, again relying on Salyer's intent to convey only the one-acre parcel, and citing *BJ's & Sons Constr Co, Inc v Van Sickle*, 266 Mich App 400, 408; 700 NW2d 432 (2005), where the attorneys proceeded despite knowing at the outset that the plaintiffs' claims were frivolous. Again, Salyer overlooks the court's ruling in favor of the Estate in the prior action. As a result, Walker's contention that he, and not Salyer, has exclusive possession of the 79-acre parcel cannot be deemed frivolous. Because Salyer no longer has an ownership interest in the 79-acre parcel, he also has no right to the $10,000 for the remaining wood taken from the parcel.

Thus, Salyer has failed to state a valid defense to the trespass claim, and the court properly granted summary disposition to Walker. Further, where it is undisputed that Salyer intentionally trespassed on the 79-acre parcel and removed trees without Walker's permission, he was properly held liable under MCL 600.2919(1) for treble damages.

## C. CORRECTIVE DOCUMENTS

Salyer next contends that the court erred in its August 30, 2022 order by declaring void Salyer's corrective documents of May 31, 2022 Whether a circuit court has subject-matter jurisdiction to enter an order is a question of law reviewed de novo. *Hillsdale Co Senior Servs, Inc v Hillsdale Co*, 494 Mich 46, 51; 832 NW2d 728 (2013).

According to Salyer, the May 31, 2022 corrective documents were outside the circuit court's jurisdiction because Walker's complaint did not state a specific claim regarding those documents. While Salyer cites general caselaw regarding civil pleadings, he does not cite caselaw limiting a circuit court's jurisdiction to allegations made in the complaint. In fact, rather than being bound to allegations in a complaint, a court's subject-matter jurisdiction "is the right of the court to exercise judicial power over a class of cases, not the particular case before it; to exercise the abstract power to try a case of the kind or character of the one pending." *Glen Lake-Crystal River Watershed Riparians v Glen Lake Ass'n*, 264 Mich App 523, 528; 695 NW2d 508 (2004) (quotation marks and citation omitted).

A quiet-title action, although statutory, is in essence an action in equity. See *1373 Moulin, LLC v Wolf*, 341 Mich App 652, 663; 992 NW2d 314 (2022). A circuit court has general equity jurisdiction. *Cherry Growers, Inc v Agricultural Mktg & Bargaining Bd*, 240 Mich App 153, 161; 610 NW2d 613 (2000). Also, circuit courts long have had jurisdiction over trespass actions. See e.g., *Pleasant Lake Hills Corp v Eppinger*, 235 Mich 174, 177; 209 NW 152 (1926).

Consider that Salyer himself placed this matter before the circuit court, where he brought suit in 2020, to quiet title over the 79-acre parcel. Salyer's "corrective documents" were in direct

---

[3] Salyer incorrectly maintains that counsel for Walker confirmed Salyer's ownership during the April 2023 oral argument in the prior appeal. Notably, Salyer has not cited a direct quote to bolster that assertion, and our review of the recording reveals no such admission.

contravention of the court's previous determination that Salyer had transferred his interest in the 79-acre parcel to Evelyn in 2015. Although Walker did not raise the ownership issue in his trespass complaint—because the ownership issue already had been settled—Salyer did so in his pleadings, so he again placed the ownership issue before the circuit court. The circuit court thus had jurisdiction to enter an order regarding Salyer's attempt to impede the already-decided ownership issue.

Salyer next states that his corrective documents were properly recorded under MCL 565.451d and MCL 565.451a to correct the allegedly void 2015 deed. Both statutes permit the filing of affidavits regarding title to property. MCL 565.451a provides in relevant part:

> An affidavit stating facts relating to any of the following matters that may affect the title to real property in this state and made by any person having knowledge of the facts and competent to testify concerning those facts in open court may be recorded in the office of the register of deeds of the county where the real property is situated:
>
> * * *
>
> (b) Knowledge of the happening of any condition or event that may terminate an estate or interest in real property. [MCL 565.451a(b).]

MCL 565.451d(1) provides in relevant part:

> An affidavit to correct the following types of errors or omissions in previously recorded documents may be recorded in the office of register of deeds for the county where the real property that is the subject of the affidavit is located:
>
> * * *
>
> (b) Scrivener's errors and scrivener's omissions. [MCL 565.451d(1)(b).]

Salyer's "corrective documents" do not, however, reflect the court's judgment in favor of the Estate, nor do they reflect Salyer's transfer of the 79-acre parcel to Evelyn. Rather, Salyer "corrected" the 2015 deed in his own favor, which contravened the judgment in the 2020 quiet-title action. Salyer cannot rely on MCL 565.451a and MCL 565.451d to support his position.[4]

---

[4] Salyer adds that Walker is judicially estopped from disputing ownership of the one-acre parcel. This point is irrelevant, where ownership of the one-acre parcel is not at issue in this case and where it is undisputed that Salyer owns the one-acre parcel. Also irrelevant is Salyer's argument that any attempt by Walker to amend his complaint to include a corrective deed would be futile. Walker's complaint addressed Salyer's alleged trespass and did not seek to relitigate the ownership issue. Salyer also argues that the 2015 quitclaim deed is void given the error in the description,

Salyer next states that Walker's claim of ownership based on the defective 2015 quitclaim deed has no basis because Walker was on notice of the mistake in the deed. This argument represents yet another attempt to relitigate the prior case. Ownership of the 79-acre parcel was determined in that case; the instant case involves trespass on that parcel, which is owned by the Estate under the *Salyer* opinion. As noted, this Court previously concluded that, "for the purposes of this litigation it has been conclusively established that Salyer intentionally conveyed the 79-acre parcel to Evelyn Walker as compensation for her financial support." *Salyer*, unpub op at 6. Therefore, Salyer conveyed his interest in the 79-acre parcel in 2015 and no longer has a possessory interest.

Also, Salyer asserts that the court erred in not deciding that Walker's complaint was frivolous, and in not ordering Walker to pay Salyer's attorney fees for having to defend such frivolous claims. According to Salyer, Walker never had a valid deed to the 79-acre farm; thus, his claim for trespass and damages was frivolous. Salyer also argues that Walker's counsel Lozier stated at oral argument that Salyer owned the farm. As discussed earlier, neither of these points has merit, such that the court did not clearly err in declining to find Walker's claims frivolous. MCL 600.2591(3). Salyer has not presented evidence to support his claim that Walker filed the instant suit to harass him. And, Walker's claim of ownership has a factual basis—the judgment in the 2020 quiet-title action. Walker's claims were not devoid of any arguable legal merit under the circumstances. The court did not err in ordering Salyer and his counsel to remove the corrective documents.

## D. STAY OF PROCEEDINGS

Salyer additionally argues that the court did not have authority to issue the contempt order for Paremsky's failure to adhere to the August 2022 order in light of the stay of proceedings, which was in effect until the issuance of this Court's decision in the quiet-title claim of appeal. When applying a de novo standard of review, *Estes*, 481 Mich at 578-579, we conclude that this issue does not withstand scrutiny.

In relevant part, the August 30, 2022 order directed Paremsky to "immediately" remove the 2022 documents by declaring them null in a document filed with the register of deeds. After filing an interlocutory application from that order, Salyer sought a stay and the court entered a stipulated stay of proceedings pending resolution of application, except for hearings on the summary disposition motions. Salyer argues that Paremsky cannot be found in contempt of court for failing to remove the 2022 documents because when the stay order was entered, all nonfinal orders, including the August 30, 2022 order, remained subject to revision.

The stay did not excuse Salyer and Paremsky from complying with the August 2022 order because the court entered the stay weeks after that order. Paremsky filed the quitclaims with the register of deeds in May 2022, the same day she filed the claim of appeal, and the statement in

---

but Salyer made this argument in his 2020 quiet-title action, which was decided in favor of the Estate and affirmed by this Court. We decline Salyer's invitation to differently determine the validity of the 2015 deed.

-10-

July 2022. On August 30, 2022, the court entered an order directing Salyer and Paremsky to remove the May 2022 quitclaim deeds and Paremsky's affidavit. On August 30, 2022, no stay had been entered, and the court's order provided that the deed and affidavit be removed "immediately." The court did not stay proceedings until October 3, 2022. Salyer does not acknowledge the delay between August 30, 2022, and October 3, 2022, and Salyer does not explain how an order staying *future* proceedings would preclude the removal of the *previously* filed quitclaim deed and affidavit.

Salyer then contends, citing MCR 2.609(A), that the August 30, 2022 order was subject to revision up until a final judgment. Salyer's interpretation would mean that parties need not ever comply with interlocutory orders until after entry of a final judgment, an incorrect conclusion. Although the court rules give the court the authority to revisit an order while proceedings are pending and determine it was mistaken, *Hill v City of Warren*, 276 Mich App 299, 307; 740 NW2d 706 (2007), Salyer has not cited authority for his proposition that the parties are not bound by such an order, or that a separate order of stay equates with reconsideration of an order under MCR 2.604(A).

According to Salyer he did not need the court's approval to file the 2022 deeds and the supporting affidavit because MCL 565.451a and MCL 565.451d permit the filing of affidavits regarding real property. The statutes speak to the filing only of an affidavit, not a property deed. MCL 565.451a permits the filing of an affidavit addressing certain specified events or circumstances that might affect title to a property. Assuming without deciding that the purported error in drafting the 2015 quitclaim deed falls within any of the stated events and circumstances listed in the statute, such an affidavit could not affect title to the 79-acre parcel because ownership of that parcel was conclusively established in the prior litigation. *Salyer*, unpub op at 5-6. As for MCL 565.451d, the asserted scrivener's error in preparing the 2015 quitclaim deed was the basis of Salyer's claim in the prior litigation to ownership of the 79-acre parcel—a claim that the trial court summarily dismissed and this Court affirmed on appeal. See *Salyer*, unpub op at 3-4. Salyer cannot rely on the statutory provisions to collaterally attack the final decision rendered in the prior litigation, which was upheld on appeal.

Consequently, the stay of proceedings did not exempt Paremsky from immediately complying with the court's order before the stay order was entered. Even if the stay did apply, the stay was lifted once this Court denied the interlocutory application.

E. CONTEMPT SANCTION

Salyer argues the court should not have issued the contempt sanction against Paremsky. This Court reviews for an abuse of discretion a trial court's issuance of a contempt order, *In re Moroun*, 295 Mich App 312, 335; 814 NW2d 319 (2012), and a trial court's decision to impose sanctions, *Legacy Custom Builders, Inc v Rogers*, 345 Mich App 514, 522; 8 NW3d 207 (2023).

"Courts in Michigan have an inherent and statutory power to punish contempt of court by fine or imprisonment." *In re Contempt of Dudzinski*, 257 Mich App 96, 108; 667 NW2d 68 (2003). See also MCL 600.1701(g). "Contempt of court is a willful act, omission, or statement that tends to impair the authority or impede the functioning of a court." *In re Contempt of Robertson*, 209 Mich App 433, 436; 531 NW2d 763 (1995).

The court found Paremsky in contempt under MCR 3.606, which applies to contempt committed outside the presence of the court, and sanctioned Paremsky under the contempt statute:

Except as otherwise provided by law, punishment for contempt may be a fine of not more than $7,500.00, or imprisonment which, except in those cases where the commitment is for the omission to perform an act or duty which is still within the power of the person to perform shall not exceed 93 days, or both, in the discretion of the court. The court may place an individual who is guilty of criminal contempt on probation in the manner provided for persons guilty of a misdemeanor as provided in chapter XI of the code of criminal procedure . . . . [MCL 600.1715(1).]

Salyer contends, however, that Paremsky complied with the August 30, 2022 order. As noted, the August 30, 2022 order directed Paremsky to "immediately" remove the May 2022 deed and the affidavit, but she did not do so until months later. Paremsky's failure to immediately obey the court's order before entry of the stay in October 2022 order, or after the March 2023 order from this Court, supports a finding that she did not immediately comply.

Also, Salyer argues that Paremsky's filings in July and August 2023, demonstrated compliance with the August 30, 2022 order. Paremsky urges this Court to apply a hypertechnical, narrow reading to the court's orders directing the removal of the lis pendens and affidavits, as she asserts that she needed to remove only the 2022 documents that clouded the title, not the 2023 documents that did so. The record also reflects that Paremsky qualified the removal by noting that the August 30, 2022 order was on appeal. Paremsky argued that to have concealed such a fact would have been fraudulent as to prospective purchasers. But "a person may not disregard a court order simply on the basis of a subjective view that the order is wrong or will be declared invalid on appeal." *Davis v City of Detroit Fin Review Team*, 296 Mich App 568, 623; 821 NW2d 896 (2012) (citation omitted). Rather than attempting to evade the court's order, Paremsky had the option of appealing this Court's denial of the interlocutory application to the Supreme Court. Absent that, she should have complied with the court's order despite her opinion that the order was wrong.

Salyer also takes issue with the court's inclusion of the May 9, 2022 order as part of the basis for the contempt finding. The May 2022 order, issued in the quiet-title action, denied Salyer's motion for reconsideration of the March 2022 judgment that established that Salyer did not own the 79-acre parcel. Thus, the court likely referenced the May 2022 order merely to support the other orders directing Salyer to remove the clouds on the title. Where the record contains ample evidence of contempt for the violations of the orders in this case, we conclude that the reference to the May 2022 order in the prior case, if error, was harmless.

F. ATTORNEY FEES

We also disagree with Salyer's argument that the court abused its discretion in awarding $2,500 in attorney fees to Walker. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008) (opinion by TAYLOR, C.J.).

In Michigan, the prevailing party generally is not entitled to recover attorney fees unless permitted under a statute, the court rules, an exception in the common law, or by the parties'

contract. *Skaates*, 333 Mich App at 84. However, a complainant who incurred costs because of contempt may be entitled to reimbursement. *In re Contempt of Pavlos-Hackney*, 343 Mich App 642, 670; 997 NW2d 511 (2022). MCL 600.1721 authorizes a court to order a party to pay a person suffering injury from the party's contempt "a sufficient sum to indemnify him . . . ." The sum under MCL 600.1721 "may include attorney fees that occurred as a result of the other party's contemptuous conduct." *Taylor v Currie*, 277 Mich App 85, 100; 743 NW2d 571 (2007) (quotation marks and citation omitted).

Salyer continues to contend on appeal, as he did in the court below, that because the August 30, 2022 order did not reference all seven of the documents filed by Paremsky to cloud title, Lozier was not authorized to prepare documents to remove them.[5] We reject Salyer's attempt to narrowly construe the court's clear directive. Both judges made clear that Salyer and Paremsky were not to file any document with the register of deeds regarding the 79-acre parcel and, had Paremsky advised the court that she had filed additional clouds on the title, the judges would have ordered her to remove those as well. Where Paremsky had recorded multiple documents to cloud title, all of them necessitated retraction.

Salyer also challenges the amount of fees. "The burden of proving the amount of the loss sustained rests on the party claiming it." *In re Contempt of Rochlin*, 186 Mich App 639, 651; 465 NW2d 388 (1990). Typically, an evidentiary hearing should be held when a party required to pay attorney fees challenges the amount claimed. *Kernen v Homestead Dev Co*, 252 Mich App 689, 691; 653 NW2d 634 (2002). But a hearing may not be necessary if the record is sufficient for review of the issue. *Id*.

On appeal, Salyer asserts that the reasonable attorney rates in the legal community average $250 per hour. Assuming for the sake of argument an hourly rate of $250, the $2,500 award would equate with 10 hours of Lozier's time. Considering the legal work required to resolve the myriad documents recorded by Paremsky, we conclude that 10 hours was a reasonable amount of time to complete the work. Accordingly, a hearing was unnecessary. Under the circumstances, the court's award of $2,500 in attorney fees to Walker was not outside the range of principled outcomes.

## G. DOCUMENTS IN ISSUE

According to Salyer, because Walker's complaint did not challenge the validity of the 2022 quitclaim deeds and the remaining five documents, nor did it request that they be declared null and void, the documents were not "in issue" in this litigation. He states the court did not have authority to order that Paremsky declare the documents a nullity where the documents were not in issue. We disagree. Whether the circuit court had the power to direct Paremsky to remove the documents

---

[5] Salyer argues that Paremsky, not Lozier, had prepared relevant documents during the parties' postjudgment negotiations. The record reflects, however, that Paremsky, rather than submitting documents, moved for clarification because she did not believe she was bound to remove documents not expressly described in the August 30, 2022 order. Therefore, Salyer has not established that Paremsky actually prepared the necessary documents.

is dependent upon the scope of its powers, which is a question of law. See *In re McCann Driving Record*, 314 Mich App 605, 608; 887 NW2d 440 (2016).

Our Court has recognized that a fact is " 'in issue' in the sense that it is within the range of litigated matters in controversy." *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 667; 819 NW2d 28 (2011) (quotation marks and citations omitted). Walker raised claims of trespass and conversion. As noted, a plaintiff claiming trespass must prove that a defendant made a direct and intentional intrusion on the plaintiff's land without authorization. *Wolfenbarger*, 336 Mich App at 15. To prove conversion, a plaintiff must prove that an individual intentionally and wrongfully exercised an act of domain over the plaintiff's property that is inconsistent with the plaintiff's rights. *Foremost Ins Co v Allstate Ins Co*, 439 Mich 378, 391; 486 NW2d 600 (1992). Accordingly, where Walker had to establish that the Estate had exclusive ownership of the 79-acre parcel, and the documents filed by Salyer and Paremsky in 2022 and 2023 placed a cloud on that ownership, the seven documents were at issue in the instant lawsuit. The court had the authority to order their removal.

Salyer cites *Cogan v Cogan*, 149 Mich App 375, 379; 385 NW2d 793 (1986), for the proposition that a matter must be put into issue via the pleadings, submitted for a decision to the trier of fact, and actually determined. But the *Cogan* Court was addressing whether a question has been "actually litigated" for purposes of res judicata; it was not discussing the broader question of whether a matter was within the range of litigated matters in controversy.

## H. FRIVOLOUS CLAIMS

Salyer finally argues that the court erred in not finding Walker's claims to be frivolous. We are not persuaded.

This Court reviews for clear error a decision regarding sanctions under MCR 1.109 for filing a frivolous pleading. See *Guerrero v Smith*, 280 Mich App 647, 677; 761 NW2d 723 (2008). This Court also reviews for clear error a trial court's decision whether an action or defense was frivolous. *Pioneer State Mut Ins Co v Michalek*, 330 Mich App 138, 145; 946 NW2d 812 (2019).

Salyer maintains that Walker's postjudgment filings violated the court rule regarding a signature on pleadings, MCR 1.109, which provides in relevant part:

(5) Effect of Signature. The signature of a person filing a document, whether or not represented by an attorney, constitutes a certification by the signer that:

(a) he or she has read the document;

(b) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and

(c) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. [MCR 1.109(E)(5).]

-14-

That court rule also provides for the assessment of sanctions:

> (6) Sanctions for Violation.  If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees.  The court may not assess punitive damages.

> (7) Sanctions for Frivolous Claims and Defenses.  In addition to sanctions under this rule, a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2).  The court may not assess punitive damages. [MCR 1.109(E)(6),(7).]

Salyer argues that Walker's pleadings were interposed for improper purposes, including to harass and to cause needless increase in the cost of litigation.  Salyer contended that he and Paremsky had complied with the July 27, 2023 order by filing affidavits with the register of deeds.  Further, the corrective documents were not part of Walker's complaint, and some of the encumbrances were not included in the court's orders.

Salyer again cites *BJ's & Sons Constr Co*, but as noted above, that case is not analogous to the instant action because, unlike *BJ's* where the attorneys proceeded despite knowing the plaintiffs' claims were frivolous, here Lozier has not put forth frivolous claims on Walker's behalf.  Walker had a legitimate legal basis for his filings.  Despite Salyer's continued arguments to the contrary, the judgment in the prior case, which this Court affirmed, established that Salyer intended to give the 79-acre parcel to Evelyn such that Salyer no longer had a possessory interest.  In light of that legal opinion, Walker had standing, as the personal representative of the Estate, to assert ownership over the 79-acre parcel and to claim trespass against Salyer.  Additionally, after discovering that Paremsky had filed documents clouding the title, Walker had the authority to ask the circuit court to direct Paremsky to remove those documents.

Salyer also contends that Walker and Lozier should be held in contempt under statute because they requested relief for claims not stated in the complaint.  While it is true that courts have the power to punish parties for abuse of process,[6] or for disobeying a court order or process,[7] Salyer has not shown that Walker abused process or disobeyed a court process.  When Walker filed his complaint, he was unaware of the 2022 deeds and affidavit filed by Paremsky, and did not become aware of the 2023 documents clouding title until Lozier's August 2023 title search.  Salyer continues to argue that Paremsky filed the documents to comply with the court's orders.

---

[6] Persons subject to punishment include "[p]arties to actions for putting in fictitious bail or sureties or for any deceit or abuse of the process or proceedings of the court."  MCL 600.1701(d).

[7] Courts may punish "[p]arties to actions, attorneys, counselors, and all other persons for disobeying any lawful order, decree, or process of the court."  MCL 600.1701(g).

-15-

The court, however, clearly ruled that the documents were not in compliance, and the record supports that the documents would have been a cloud on the title had they not been withdrawn.

Affirmed.

/s/ Christopher M. Murray
/s/ Michael J. Kelly
/s/ Noah P. Hood